[No. 14230. Department Two. February 26, 1918.]

WILLIAM H. RADER, *Appellant,* v. OLIVE SANDER *et al.,*
*Respondents.*[1]

JUDGMENT—RES JUDICATA—SUBJECT-MATTER—PARTIES. Judgment in an action between riparian owners, determining the maximum amount of water that should flow down a certain creek, without apportioning the same to the various owners, is conclusive and *res judicata* as to that question in a subsequent suit by one of the same parties to reopen the same question, although plaintiff subsequently acquired title to a tract of land whose owner was not a party to the former suit.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered January 3, 1917, dismissing an action to quiet title, tried to the court. Affirmed.

*Pruyn & Hoeffler* and *Arthur McGuire,* for appellant.
*Carroll B. Graves* and *John H. McDaniels,* for respondents.

MORRIS, J.—Appellant brought this action against respondents and numerous other defendants owning lands riparian to Wilson and Lyle creeks, in Kittitas

[1]Reported in 171 Pac. 257.

county, praying that his title to sixty inches of water flowing from Wilson creek into Lyle creek be quieted, with the usual injunctive relief. All of the defendants, save respondents, defaulted. The respondents answered, setting up affirmatively prior rights to the waters of Wilson and Lyle creeks, the respondents Hovey claiming under respondent Sander. Respondent Sander further alleged that, on August 12, 1890, a decree was entered in the superior court of Kittitas county, in cause No. 96, entitled Carl A. Sander v. J. B. Jones et al., which decree adjudicated the rights to the use of the waters of Wilson and Lyle creeks adversely to the right now sought to be litigated by appellant, and claimed such decree to be binding and of full force against the appellants. This defense was sustained and plaintiffs appeal.

The only question, then, arising upon this appeal is whether or not the decree of August 12, 1890, in cause No. 96, is *res judicata*. The following description of the physical situation, taken from respondent Sander's brief, will be helpful:

"Wilson creek is one of two main streams having their common origin in the mountains lying to the north of Kittitas valley. The waters come down a number of canyons and unite and flow in a common channel for a mile or so. Then they divide into two forks, one of which, flowing in a southeasterly direction, is Nanum creek; and the other, flowing in a southwesterly direction, is Wilson creek.

"Some miles below the forks another and smaller stream, known as Lyle creek, goes out from Wilson creek and runs to the south.

"Appellant Rader owns lands along Lyle creek. Respondent Olive Sander owns lands along Wilson creek below the head of Lyle creek."

The plaintiff in cause No. 96 then represented the interest and rights now owned by the respondents. The

defendants included this appellant and other owners of lands upon Lyle and upon Wilson creeks above the lands of respondents. The purpose of the action was to establish the rights of Sander in the waters of Wilson creek, and to enjoin the defendants from using or diverting the waters in any manner detrimental to the Sander right. The appellant, as the owner of lands lying between Nanum and Lyle creeks, answered in cause No. 96, denying any use or diversion as against Sander, and claiming the right to the use of seventy inches of water from Wilson creek, to flow through Lyle creek to his then lands. The decree established the Sander right to the waters of Wilson creek; found that Lyle creek was a part of Wilson creek; adjudged that Rader and the other defendants had diverted the water from Wilson creek to Lyle creek, to the use of which Sander was entitled; established the respective rights of the parties, including Rader, to the waters of Wilson and Lyle creeks, and then decreed:

"that during the months of April and May of each year when there is an ordinary supply of water in said Wilson creek, 60 inches of said water shall flow down said Lyle creek, and said flow in Lyle creek shall decrease during the month of June according to the stage of water in said Wilson creek until the 1st day of July of each year, at which time it shall cease."

In the present action, it appears that Rader, since the decree in cause No. 96, has become the owner of lands lying between Nanum and Lyle creeks that were, at the time of the former decree, owned by his father, A. J. Rader, who was not a party to the former suit. It is by virtue of this ownership to these subsequently-acquired lands that Rader now seeks to obtain an adjudication, claiming as to them the right to the use of sixty inches of the water to flow from Wilson creek into Lyle creek, asserting he is not bound by the decree in cause No.

96, his grantor not having been made a party in that action, nor any water right affecting these lands having there been determined; while respondents contend that, as between rights to the respective waters of Wilson creek and Lyle creek, the former decree is conclusive, and that if, by his subsequent purchase, appellant obtained any rights to the waters of Lyle creek, that right must be enforced against the lands riparian to Lyle creek, and not against the lands of respondents upon Wilson creek. It is evident from the language of the decree in cause No. 96, when read in connection with the pleadings, findings of fact, and conclusions of law, that it determined and adjudicated sixty inches as the maximum flow of water from Wilson creek into Lyle creek, and divided this amount of water to the riparian lands according to the respective rights. The plaintiff in that suit was contending only as to the amount of water that should flow from Wilson creek into Lyle creek. He was not interested, as between the lands riparian to Lyle creek, how that water should be divided. It was not a question of title or ownership, but of the amount of water. The owners upon Lyle creek, while as between themselves there was a question which was adjudicated as to their respective rights, contended mainly against the plaintiff as to the amount of water that should be decreed flowable into Lyle creek. That question, irrespective of how the water was to be divided, was determined and is now *res judicata*.

Sixty inches of water is the maximum that can be diverted from Wilson creek into Lyle creek. The fact that Rader is now suing in a different capacity—as the owner of other lands—does not alter the question one way or the other. The fact remains the same. Lyle creek is entitled to a maximum of sixty inches of water as established in the former decree. If that decree is to be opened in this suit, or any other affecting the

same rights, then the rights of owners of lands upon Wilson creek, quieted in them during all the years that have elapsed since the entry of that decree, presumably passing through various ownerships, made the subject of various contracts, are now subject to change, and partial or total loss. It means the reopening of that decree and a rehearing upon the rights there determined. The capacity which enabled appellant to question the amount of water that should flow from Wilson creek into Lyle creek was his ownership of lands riparian to Lyle creek. The material fact and essential determination was not the capacity in which he sought affirmative relief, but the relief itself. An adjudication of the relative flow of these two creeks was the main fact to be, and which was, determined, not the right or capacity which enabled him to litigate that fact. In *Bissell v. Spring Valley Township*, 124 U. S. 225, it was held that an adjudication, in an action on coupons of municipal bonds, sustaining the defense that the municipality never executed the bonds, that the bonds were not its legal obligations, was conclusive in a subsequent action brought by the same party on different coupons of the same bonds. In *New Orleans v. Citizens' Bank*, 167 U. S. 371, 396, it was held that:

"The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies."

The controlling question here is whether, under the pleadings in the former suit, the amount of water to be taken from Wilson creek by Lyle creek was a matter in issue and determined as between the parties to this suit. That it was a matter in issue, and a determinative

issue, and was actually decided in the former case, is, it seems to us, clear. That it was material is equally clear, for upon its determination depended the question of the amount of water in Wilson creek usable and to be used by the lands upon Wilson creek, and the amount that could be diverted to the lands upon Lyle creek. In *Southern Pacific R. Co. v. United States*, 168 U. S. 1, the case turned upon whether a prior adjudication of the sufficiency of certain maps as amounting to a definite location as to certain lands thereby brought within its land grant was conclusive of the question of the sufficiency of those maps when the same question was presented in regard to other lands; and the court held that the prior adjudication of that question was controlling. The court said:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

In *Munson v. Baldwin*, 93 Wash. 36, 159 Pac. 1070, citing 2 Black, Judgments, § 767, we held that one of the tests of whether or not a former judgment is *res judicata* is whether or not the facts relied upon for recovery in the second action negative or are inconsistent with the facts in the former judgment. Where there is no direct opposition or inconsistency, but the facts relied upon in both suits may be equally true, there is no bar. Applying this rule to the facts here, it seems clear to us that there is such inconsistency and direct opposition in the two sets of facts that one must necessarily negative the other. Sixty inches of water

having been decreed the maximum flow of Lyle creek in the former suit, it cannot now, as between the same parties, be equally true that a greater amount of water is to be taken from Wilson creek and turned into Lyle creek. Such decrees would be in direct opposition to each other. They cannot both stand. Nor can the facts supporting them be equally true.

What we have said is sufficient to state our view of the question presented by the appeal, and the judgment is affirmed.

ELLIS, C. J., MOUNT, CHADWICK, and HOLCOMB, JJ., concur.