# WHITMORE v. MURRAY CITY

No. 6755.  Decided December 20, 1944.  (154 P. 2d 748.)

See 16 C. J. S. Constitutional Law, Sec. 602. Declaratory Judgments, note, 68 A. L. R. 110. See, also, 16 Am. Jur., 291.

*T. D. Lewis, David T. Lewis,* and *Lynn S. Richards,* all of Salt Lake City, for appellant.

*Fabian, Clendenin, Moffat & Mabey,* of Salt Lake City, and *Glen E. Howe,* of Murray, for respondent.

WADE, Justice.

This is an appeal by plaintiff and appellant herein from a judgment of no cause of action.

A. O. Whitmore, prior to his death, had filed a complaint seeking a declaratory judgment establishing the priority of a water filing for power purposes. Appellant has been substituted in this case as the executor of his last will.

On October 1, 1930, A. O. Whitmore filed in the office of the state engineer an application, known as filing No. 10980, for the appropriation of 20 c. f. s. of water for power purposes on Little Cottonwood Creek in Salt Lake County, with the point of diversion a short distance below the point at which the Whitmore Oxygen Plant returns its used water into Little Cottonwood Creek. A number of extensions of time within which to perfect this application has been granted by the state engineer and at the time this suit was brought the application was in good standing.

Murray City had filed and holds certificates of appropriation for 45 c. f. s. of water for power purposes on Little Cottonwood Creek as evidenced by its power filing No. 10466, with date of priority of May 16, 1929, power filing No. 10105, with date of priority of January 14, 1927, and power filing No. 3287, with date of priority of June 16, 1910. Each of these filings was for 15 c. f. s. of water. In 1933, Murray City made application to the state engineer to change the points of diversion and return of its filings No. 10105 and No. 3287 to about the same place as its filing No. 10466 which was at about the same place as plaintiff's proposed point of diversion under his application No. 10980. The state engineer approved these applications and changed the points of diversion as requested, making the date of priority of application No. 10105 the same as on the original

application for appropriation but on filing No. 3287 for reasons not appearing herein, the state engineer granted the change with a priority date of October 15, 1934, which is subsequent to plaintiff's priority date.

Plaintiff admitted that defendant's power filing No. 10466 is prior in time and rights to his filing, and defendant admits that plaintiff's filing is prior in time and rights to its power filing No. 3287, even though the original date of filing appears to be 1910, therefore there is only an actual dispute as to priority as between plaintiff's filing No. 10980 and defendant's filing No. 10105.

Murray City operates a hydro-electric power plant at the mouth of Little Cottonwood Canyon and has since 1932 placed 30 c. f. s. of water to a beneficial use, when available, from Little Cottonwood Creek, for the generation of electricity. Plaintiff has had knowledge of this. Little Cottonwod Creek, except for the spring run-off months of May and June, seldom has more than 30 c. f. s. of water in it, and for the major portion of the year there is less than 30 c. f. s. of water in the stream. Under its original point of diversion in its application No. 10105, Murray City would have diverted its water at a point below plaintiff's proposed point of diversion and therefore would not have interferred with the proposed use by the plaintiff above that point for power purposes. It is apparent, therefore, that if the right granted defendant to change its point of diversion under its application No. 10105 is prior to plaintiff's right under his application No. 10980, plaintiff's application would be valueless.

The court found that in applying for a change in point of diversion under its certificate No. 10105, the defendant had complied with all the provisions of the act pertaining thereto and that the state engineer had given due notice of defendant's application by publishing notice in the manner and time as provided by law. Upon the granting of its application, the defendant expended over $125,000 in the construction of a power plant and has ever since used all the available water at its new point of diversion in sup-

plying electricity to Murray City and surrounding territory. Plaintiff was aware of this but did not protest. The court also found that defendant's changed point of diversion conflicted with rights claimed by plaintiff under his application No. 10980. The court concluded that plaintiff had not been deprived of due process of law by reason of any act of the state engineer in granting the defendant its application to change its point of diversion and return under its application No. 10105, and furthermore that plaintiff was barred from bringing this action by the provisions of Sec. 104-2-30, R. S. U. 1933, which section prescribes the period of limitation within which an action of this type may be brought. The court based its conclusion of the application of this statute on the fact that Murray City had recorded its certificate of appropriation showing the changed point of diversion more than four years prior to the commencement of this action by plaintiff.

It is plaintiff's contention that the court erred in finding that he was not deprived of due process of law by any act of the state engineer in granting defendant's application for a permanent change of its point of diversion and return, because the state engineer had not served plaintiff personally with notice of such application, although defendant through its officers had personal knowledge that plaintiff claimed a prior right, and his application during the pendency of the proceedings was on file and in good standing in the office of the state enginer. As we have stated, notice of defendant's application for change in point of diversion and return was given by publication as provided for in Sec. 100-3-3, R. S. U. 1933, which reads that:

"Any person entitled to the use of water may change the place of diversion or use, * * * but no such change shall be made, if it impairs any vested right, without just compensation; * * *. Before the approval of any such application the state engineer must * * *, give notice thereof by publication * * *. Said notice shall be published at least once a week for a period of four weeks. Any person interested may, at any time within thirty days after the last publication of said notice, file with the state engineer a

protest against the granting of the application, * * * which shall be duly considered by the state engineer, and he shall approve or reject the application for change of point of diversion, place or purpose of use. * * * *The determination of the state engineer shall be final unless contested in court within sixty days after written notice to the applicant of the action of the state engineer.* * * *" [Italics ours]

A literal reading of the portion of the above section which we have italicized would lead one to believe that the determination of the state engineer, approving or denying an application for change of point of diversion adjudicated the rights of parties, since the act provides that no such change shall be made "if it impairs any vested right, without just compensation," and it would appear that a necessary implication is that the state engineer must determine the existence or non-existence of such vested rights before he acts, and that when he does act and approves an application, that in so doing he has found that no vested rights are impaired. However, such a construction would fail to take cognizance of the purposes of our Water and Irrigation Act and the rights and duties of the state engineer as there set out. The office of state engineer was not created to adjudicate vested rights between parties, but to administer and supervise the appropriation of the waters of the state. In *Eardley* v. *Terry*, 94 Utah 367, 77 P. 2d 362, this court considered the rights and duties of the state engineer in approving or denying an application for appropriation of water rights and we there held that in fulfilling his duties he acts in an administrative capacity only and has no authority to determine rights of parties. The same reasoning applies to the extent of the state engineer's authority when he determines to grant or deny an application for change of diversion, use or place. It follows that in granting Murray City the right to change its point of diversion and return, the state engineer did not adjudicate the priority to the use of the water at that point of diversion, but merely determined that it could use the water at that point as long as it did not interfere

with the prior rights of others. The determination of the priority of rights is a judicial function and not among the powers of the state engineer. Since any action by the state engineer under this section cannot affect any vested right, it follows the court did not err in finding that notice by publication as provided therein, does not violate the due process clause of our constitution.

We come now to the second question presented in this case. Did the court err in finding that plaintiff's cause of action was barred by the provisions of Sec. 104-2-30, R. S. U. 1933, because he had not brought this action within four years after Murray City had recorded the certificate issued by the state engineer showing the allowance of the change in point of diversion and return?

The question must be answered in the affirmative. Plaintiff's application for appropriation of 20 c. f. s. of water for power purposes was in good standing at the time this action was commenced. By that application he had the right to proceed to construct works to place the water for which he had applied to a beneficial use. As we have shown above, Murray City, by obtaining permission from the state engineer to change its point of diversion, only obtained a right to do so if no prior vested rights were affected. The recording of its certificate gave it no greater right. Defendant by constructing its plant at its new point of diversion and using the water before plaintiff had begun any construction works, was not interfering with any right of plaintiff's. Plaintiff's cause of action could only arise when upon construction of his works, defendant's act in changing its point of diversion should deprive him of any water in Cottonwood Creek up to 20 c. f. s. of water for which he had applied, after the defendant had used its 15 c. f. s. of water to which it admittedly had prior right. As stated by Kinney on Irrigation and Water Rights, 2d Ed. Vol. 2, Sec. 788, pages 1374, 1375:

"Between the time of the inception of the right of the prior appropriator and the time of the full consummation of his appropria-

tion, intermediate or intervening appropriators may acquire a right to the use of the water by an appropriation of the same; this, however, is but a temporary right and must give way to the rights of the prior appropriator when he has completed his appropriation and is ready to use the water claimed, * * *. But, while the prior appropriator's dam, canal, or other works are in the process of construction, but he is not yet ready to actually use the water for the purpose intended, its use by other persons causing no injury to the first appropriator gives him no cause of action for relief, either equitable or legal."

It follows the court erred in finding plaintiff's cause of action was barred by the statute of limitations.

Respondent argues very strenuously that this is not a proper case for a declaratory judgment as no rights can be finally determined because plaintiff's right is contingent upon his fulfilling the requirements of our irrigation act, constructing works and putting the water to a beneficial use. We can find no merit to this contention. In this case the plaintiff will be put to considerable expense in perfecting his works so as to be able to put the water to a beneficial use. It is very important to him to obtain a determination as to the priority of his right when it is perfected in relation to defendant's rights which apparently conflict, before he makes these expenditures. In *Gray* v. *Defa*, 103 Utah 339, 135 P. 2d 251, 254, this court said a declaratory judgment is a proper remedy:

"whenever it will serve a useful purpose in settling the uncertainty and insecurity giving rise to the proceeding."

In the instant case the uncertainty which the court is asked to settle is whether plaintiff's right when he appropriates the water will be prior to defendant's right. Although it is true that plaintiff does not and cannot have a right to the use of the water until he has completed his works and put it to a beneficial use, nevertheless, the right to proceed and acquire this right by complying with the statutory requirements is a valuable right and its value often depends upon its priority. As stated by

Hutchins in "Selected Problems in the Law of Water Rights in the West," page 326, quoting from *Nichols* v. *McIntosh,* 19 Colo. 22, 34 P. 278:

"Property rights in water consist not alone in the amount of the appropriation, but, also, in the priority of the appropriation. It often happens, that the chief value of an appropriation consists in its priority over other appropriations from the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right. * * *"

If the court determines the plaintiff's right after it is perfected is prior to defendant's right, that adjudication binds the parties to the action. Should plaintiff fail to perfect his appropriation another situation would be presented. The fact that it is possible for a plaintiff to lose a right which he has at the time suit is commenced is no reason for not entertaining the action. The plaintiff in a suit to quiet title may be in imminent danger of losing his title by foreclosure action or for some other reason, but that would not affect his right to bring the suit while he is still the owner of the property.

We have carefully considered all of respondent's contentions but find no merit to them.

Judgment reversed and remanded for new trial. Costs to appellant.

WOLFE, C. J., and LARSON, McDONOUGH, and TURNER, JJ., concur.