UNITED STATES v. DISTRICT COURT OF FOURTH
JUDICIAL DIST. IN AND FOR UTAH COUNTY et al.

No. 7506.   Decided December 21, 1951.   (238 P. 2d 1132.)

See 67 C. J., Waters, sec. 465. Administrative Law, extent of review under. 42 Am. Jur., Public Administrative Law, secs. 206 et seq.

E. J. Skeen, Dept. of Reclamation, Scott M. Matheson, Salt Lake City, for plaintiff.

Clinton D. Vernon, Atty. Gen., J. Lambert Gibson, Asst. Atty. Gen., Clair M. Aldrich, and Christenson & Christenson, Provo, for defendants.

WADE, Justice.

The United States seeks a writ, based on its sovereign immunity, to prevent the Fourth District Court from taking jurisdiction of an appeal from a decision of the state engineer approving its application for a change of the diversion place of some of its irrigation waters. These water rights were obtained by the government as appurtenances to lands acquired 'in the construction of the Deer Creek reservoir, which lands are now under water. The permission to change the place of diversion of such waters was obtained over the protest of other water users who claim that such change will impair their vested rights to the use of the waters of the Provo River and who appealed from the decision by commencing an action in the district court to review the decision of the state engineer, whereupon the United States instituted this action.

The United States which initiated these proceedings by applying to the state engineer for a change of place of diversion is now claiming the right to make such change under the engineer's favorable decision. The defendants here contend that Congress has expressly waived such immunity from this suit under the present circumstances and that by filing and relying on its approved application the United States has submitted to the jurisdiction of the district court to review the engineer's decision. These contentions are sustained and the writ denied.

The administration of the waters of the western arid states present many vital and complicated problems. The right to the use of water, although a property right, is very different from the ownership of specific property which is

subject to possession, control and use as the owner sees fit. Such right does not involve the ownership of a specific body of water but is only a right to use a given amount of the transitory waters of a stream or water source for a specified time, place and purpose, and a change in any of these might materially affect the rights of other users of the same stream or source. Streams and other water sources are usually divided and subdivided between many users and the various divisions are used in turns of a designated number of hours per day or other period of time. A stream of water or other source may be supplied from many sources, some apparent and others unknown, and often where it goes to is difficult or impossible to trace. The amount of water in a stream usually varies from year to year, season to season, and sometimes from day to day and hour to hour. Most farms of this state are vitally dependent on irrigation waters and particularly during the later part of the irrigation season the demand is usually much greater than the supply, and much more land could be brought under cultivation if there was sufficient water. So the keepng of proper records, the equitable and orderly distribution and the taking of effective measures to conserve the waters are of vital importance to the well being of this state.

To meet this urgent need, the Legislature in 1903[1] created the State Engineer's office to keep records of all established water rights and those to be acquired in the future, to supervise the distribution of the water, and to keep records of and regulate future appropriations and changes in the place of diversion, use and nature of the use. Although the engineer is required, the same as courts, to exercise discretion, determine facts after a hearing and approve or reject applications ac-

[1]Laws of Utah for 1903, Ch. 100, pp. 88-107, now Title 100, U. C. A. 1943. Except where expressly otherwise stated, all references to statutes are to U. C. A. 1943.

cordingly, his duties are administrative in nature and purpose and not unusual for administrative officers.

The State Engineer's decisions, often have the effect of determining valuable rights. Neither an appropriation or change in diversion place or purpose or place of use can be initiated or accomplished under our law without his approval or the approval of the district court on review.[2] His decisions require notice to all interested persons who may protest, whereupon the Engineer must investigate and hear evidence of all interested parties and he should approve or reject applications to appropriate, and applications for a change and issue or deny certificates that such applications have been accomplished in accordance with the law and the facts as he finds them.[3] With the Engineer's approval the applicant may proceed to make such appropriation or change but if he rejects such application the applicant is prohibited from taking any of the steps proposed in his application so long as such rejection remains in effect.[4] Such decisions are declared final unless reversed by a review in the district court,[5] and any person changing or attempting to change a place of diversion, place of use or purpose of use without first applying to the State Engineer is guilty of a misdemeanor[6] and no right to appropriate can be initiated or accomplished except by filing an application therefore with the State Engineer.[7] Thus the decision of the Engineer and of the district court on appeal therefrom have the effect of establishing or denying valuable rights but

---

[2]Sections 100-3-1, 3, 8 and 14.

[3]Sections 100-3-3, deals with applications for change, 6 with notice of such applications, 7 with protests, 8 and 10 with approval or rejection of such applications, 13 with protests, hearings and notice, 16 with proof of appropriation and permanent changes, 17 with certificate of appropriation, which is made prima facie evidence.

[4]Section 100-3-10.

[5]Section 100-3-3 and 13.

[6]Section 100-3-3.

[7]Section 100-3-1.

such decisions, except where the issuance of a certificate of appropriation or change is involved do not purport to have the effect of adjudicating the right to the use of water or to change the place of diversion or use or purpose of use and even the certificates mentioned are only prima facie evidence of the facts certified.[8] His decisions seldom deal with priority as between claimants but under certain circumstances his approval of an application may be made expressly subject to the rights under other applications which are filed later,[9] but the time of filing an application usually is determinative of its priority.

The legislature provided that any person aggrieved by the engineer's decision may bring an "action in the district court for a plenary review thereof" and that the hearing therein "shall proceed as a trial de novo."[10] The use of the terms "review" and "trial de novo" indicate that the court shall review only the issues of law and fact which were involved in the engineer's decision. That is, whether the application shall be approved or rejected, and as a corollary thereto whether on all the evidence adduced at such trial de novo the engineer's approval or rejection should be sustained, rejected or modified.[11] The district court by its decision, the same as the engineer's decision in approving or rejectng such application has the effect of determining whether the applicant may proceed to perfect a right thereunder. In re *Application 7600,* 63 Utah 311, 225 P. 605, 607, decided in 1924 was under statute which provided for an appeal but did not mention plenary review or trial de novo and did not detail the steps necessary to get into the district court. There we said

"the trial in the district court should be a trial de novo, and limited to the particular question decided by the state engineer".

---

[8]Section 100-3-17.

[9]*Tanner* v. *Bacon,* 103 Utah 494, 136 P. 2d 957.

[10]Section 100-3-14 and 15.

[11]See note 9 supra.

Of course this does not mean that the evidence in the case or the decision of the district court would be the same as that of the engineer. In *Eardley* v. *Terry*, 94 Utah 367, on pages 374 and 377, 77 P. 2d 362, on page 365, we said:

"When an appeal is taken from the decision of the state engineer in such a case, the trial court is required to determine the same questions de novo. It determines whether the application should be approved or rejected and does not fix the rights of the parties beyond the determination of that matter. The issues remain the same upon an appeal to this court. All that the district court, is called upon to do is to determine whether the application should be rejected or approved.

\*     \*     \*     \*     \*

"It is not for the court, on an appeal from the decision of the state engineer rejecting respondent's application, to decree to him any waters which he may be able to obtain by conserving and increasing the flow of the stream involved. It should simply determine whether the application was rightly rejected. In determining that question, the court stands in the same position as the state engineer did. It must determine from the evidence whether there is probable cause to believe that there is unappropriated water available for use; that the applicant can beneficially use such unappropriated water; and that such water can be diverted from the source of supply and used without injury to or conflict with prior rights. If the application is approved, then the applicant must proceed under and be governed by the same statutory provisions as would have been applicable had his application been approved by the state engineer."

To the same effect is *Tanner* v. *Bacon*, 103 Utah 494, 136 P. 2d 957; *Whitmore* v. *Murray City*, 107 Utah 445, 154 P. 2d 748.

The district court's judgment in reviewing the engineer's decision is limited to the issues determinable by the engineer and in general has the same effect as though it were made by him. The question to be determined is whether or not under the facts established in that ■ court the engineer's decision should be upheld or reversed taking into account the statutory powers of the engineer but the court may not determine issues not within the power of the engineer to determine. In the case of an application to appropriate or to change the place of di-

version or use, it merely approves or rejects the application without determining the priorities of the parties, although often the facts recorded or shown by the engineer's records may be conclusive as to the priorities of the rights of the parties. Usually, the date of the application determines its priority on the basis of the first in time is first in right but this is not always so.[12] Plaintiff's counsel cites *Eardley* v. *Terry*, supra, and quotes from *Whitmore* v. *Murray*, supra [107 Utah 445, 154 P. 2d 750], to the effect that

"The office of state engineer was not created to adjudicate vested rights between parties, * * *"

and that

"The determination of the priority of rights is a judicial function and not among the powers of the state engineer."

He seems to conclude therefrom that the decisions of the engineer are administrative but those of the court in reviewing them somehow become a judicial function. The import of these cases are exactly opposite from that conclusion. Whether or not we call the engineer's decision administrative and the district court's decision judicial, no rights to the use of water accrue by the mere approving or rejecting of an application, the only thing thereby determined is whether the applicant may proceed in accordance with the statute to perfect the right applied for. *Riordan* v. *Westwood*, 115 Utah 215, 203 P. 2d 922.

In the *Eardley* case, the engineer denied an application to appropriate and on appeal the district court not only approved the application but awarded appellant the right to use the water for which he applied. On appeal, we reversed that award, using the language quoted ■ above from that case to the effect that the issues before the court on appeal are the same as they were

---

[12]*Tanner* v. *Bacon*, supra, *Whitmore* v. *Murray City*, supra.

before the engineer, that the court could only approve or reject the application, that it should approve if there was reason to believe that there were unappropriated waters in the stream but on such appeal the issue of whether an appropriation had been made was not before the court. This is obviously correct for the applicant under our statutes cannot appropriate water or change the place of diversion or the place or purpose of use until his application to do so has been approved, the right to appropriate or change the diversion or use of water is not complete until the appropriation or change has actually occurred, so it would be impossible for him to establish any rights under such application and have them adjudicated at the time the application was approved by the court.

The *Whitmore* case was not a review of the engineer's decision but an independent action seeking a declaratory judgment to establish the right of plaintiff therein to appropriate under his application the amount of water for which he had applied for power purposes. The defendant in that case filed its application to appropriate also for power purposes with the engineer before plaintiff but in that application its diversion place was such that both of them could use the same water, one after the other, so there was no conflict between these applications. After plaintiff filed his application, defendant applied for and was granted a change in its diversion place to a place where the same water could not be used to supply both applications and most of the year there was not enough water to supply the two of them at the same time. Although he had notice thereof, plaintiff did not protest defendant's application for a change in diversion place but after his time for appeal therefrom had expired he filed that action to establish his right to complete his appropriation with priority over the defendant. The defendant therein argued that the priority of its right over the plaintiff's had been established by the engineer's decision allowing the change in place of diversion, contending that such decision necessarily

determined that such change did not impair any vested rights. We rejected that contention by the statement quoted above from that decision relying on the *Eardley* case. We held in substance that the engineer's decision approving the application for a change did not determine the priority of the rights of the parties to the water at the changed diversion place but only determined that there was reason to believe that the defendant could divert some water during some part of the year at the new diversion place without impairing the rights of plaintiff, that the engineer's approval of defendant's application only allowed him to divert such water at the new diversion place as could be so diverted without impairing rights of others that under the facts of that case since plaintiff had applied first to appropriate the water at that place of diversion his right to appropriate the water at that place was prior to defendants and that defendant under its approved appliction to change its place of diversion could only divert water at that place when it could do so without interfering with plaintiff's prior right thereto.

From these decisions and the cases cited above, it is clear that the district court's judgment can only cover the issues subject to determination by the Engineer and that the effect of such judgment is the same as it would have been if the Engineer had reached the same conclusion in the first instance. The Engineer in granting an application does not determine that the applicant's rights are prior to the rights of the protestant but only finds there is reason to believe that the application may be granted and some water beneficially used thereunder without interfering with the rights of others. Under such a holding, the Engineer rejects applications only when it is clear that the applicant can establish no valuable rights thereunder, he does not adjudicate claims but decides only that there is probable cause to believe that applicant may be able to establish rights under his application without impairing the rights of others. Such a decision is administrative in

nature and purpose and the decision of the court on review, except for the formalities of the trial and judgment is of the same nature and for the same purpose. The object of the engineer's office is to maintain order and efficiency in the appropriation, distribution and conservation of water and to allow as much water to be beneficially used as possible. So construed, the law provides a period of experimentation during which ways and means may be sought to make beneficial use of more water under the application before the rights of the parties are finally adjudicated. If we were to finally adjudicate applicant's right to change or to appropriate water at the time that such application was rejected or approved, he would get only such rights as he could establish by a preponderance of the evidence that he could use beneficially without interfering with the rights of others and in such hearing he would not have the benefit of any opportunity to experiment and demonstrate what he could do. Such a system would cut off the possibility of establishing many valuable rights without a chance to demonstrate what could be done.

Section 383 of the Federal Reclamation Act, 32 Stat. 390, 43 U. S. C. A. 383, provides as follows:

"383. Vested rights and State laws unaffected by chapter. Nothing in this chapter shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this chapter, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof. (June 17, 1902, c. 1093, § 8, 32 Stat. 390.)"

Pursuant to those provisions and in compliance with the Utah statutes, on June 12, 1945, the United States filed an application to change the place of diversion and use of its water rights which had previously been used to irrigate the lands now covered by the Deer Creek Reservoir. By

such application, it proposed to store such waters in that reservoir and release them later as needed into the channel of the Provo River and redivert them into existing canals and the Salt Lake Aqueduct near the mouth of Provo Canyon and use them as a supplemental supply to irrigate 70,000 acres of land in Utah and Salt Lake Counties. The plaintiffs in the appeal action in the district court represent large water companies and systems which distribute the waters of the Provo River below the mouth of Provo Canyon. They protested against allowing that application claiming that prior to building of the Deer Creek Reservoir the waters used to irrigate the lands percolated back into the channel of the Provo River and were again diverted and used by them, that by building the revervoir this percolation has been cut off, that if this application is allowed they will be deprived of the use of such water which rights they claimed is prior to the rights of the predecessors of the United States to such use, and that their rights to use this water will be impaired by such change.

The United States answered the protests stating that it proposed to use only such waters as it could use without interfering with the rights of such plaintiffs and offered to modify its application so as to protect such rights. After a hearing before the state engineer, the United States modified its application in accordance with its interpretation of the evidence and such offer by reducing the quantity of water which it applied to change from 43.292 cubic feet per second ( c. f. s.) to 10.30 c. f. s. The engineer approved the application subject to all rights which might be adversely affected. Thus it is clear that the engineer's decision did not purport to determine how much water the applicant could redivert and use from the Provo River without impairing the rights of others, but merely found that there was reason to believe that some of such waters could be so rediverted and used. Such approval of the change of place of diversion and use was expressly limited to such waters as could be so rediverted and used without impairing the rights of others.

The protestants thereupon commenced the action in the district court to review such decision. In their complaint, many technical, legal and equitable grounds are set up to defeat the application and the right of the United States to such waters, thereby indicating that such plaintiffs proposed to litigate in that action the validity of all of such claims. The engineer recognized that he had no authority to adjudicate many of those claims, and, as previously pointed out, the issues before the district court in reviewing his decision are limited to those which the the engineer had the right to determine. So the district court in reviewing the engineer's decision also has no right to adjudicate the rights of the parties to the use of this water but can only determine whether there is reason to believe that some of this water can be rediverted and used as proposed by the application without impairing the rights of others. If it finds there is reason to so believe, the application should be granted; otherwise it should be refused. But in any event, such approval would allow the change only to the extent that it can be made without impairing the rights of others.

Although the United States claims the benefit of the engineer's approval of its application, it contends that it is not subject to the jurisdiction of the district court on appeal from that decision because it has not waived immunity from such suit. If all of the defenses against the approval of that application set out in such complaint could be litigated and finally adjudicated in such action, then there would be much force to that argument. Since the only issues that the district court can determine in that action are those which are inherent in the engineer's decision which only requires a determination of whether there is reason to believe that sometimes some of such waters may be diverted at the new diversion place and used as the application proposes without impairing the rights of others, the United States is subject to no greater risk in the review by the district court than it was

in filing its application with the state engineer. In other words, this is merely an appeal to the court from an administrative decision, and the United States does not risk an adjudication of its rights on such appeal. Its only risk is that it will be unable to convince the court that there is reason to believe that some such change can be made without impairing the rights of others. In view of these facts and the fact that the Secretary of Interior is required by federal statute to comply with the state laws in his administration of the Reclamation Act, we conclude that the district court has jurisdiction to review the Engineer's decision.

The United States contends that since the law as applied to it is different in some instances from the law as applied to private persons and other private legal entities, it is not subject to the jurisdiction of the district court. It claims that it is not subject to the payment of costs in legal actions and that different rules are applied in establishing estoppel and abandonment against it than in the case of a person or other legal entity. The plaintiffs do ask for costs in the district court action and claim estoppel and abandonment. The questions of estoppel and abandonment were not issues to be determined by the State Engineer and therefore cannot be adjudicated in the review of that decesion in the district court and the only bearing they can have on the decision in the district court is the light they may throw on the question of whether there is reason to believe that some of this water may be diverted under this application without impairing other rights. Certainly, the fact that the law may be different as applied to the United States as to the payment of costs and estoppel and abandonment is not grounds for denying jurisdiction to the district court. We cannot on that account assume that the district court will erroneously decide those questions and if it should, means have been provided for correction of erroneous decisions.

Though the United States claims that the district court has no jurisdiction over it to determine this case which it started by applying to the State Engineer for a change of diversion place, and is relying on a favorable decision of such Engineer to effect such change, it cites no cases which hold that it is entitled to take advantage of a preliminary decision but is not subject to the right of appeal from such decision provided by law. It seems to argue that it is entirely immune from any control by the Engineer and courts of this state and that its administrative officers are entitled to follow their own interpretation of the law and its rights thereunder without any interference or control by the officers of this state. In view of the very complicated administrative problems which the use of water presents, such a rule would be very unusual. It would be somewhat similar to the situation that would result if the officers of the federal government were to say they in their official capacity were not subject to state traffic regulations. Such a rule would result in confusion and chaos. That such is not the law Congress has made clear by section 383 supra, which directs the Secretary of the Interior to "proceed in conformity with" the state law in administering the Reclamation Act. And the very act of the plaintff in this case in filing its application with the State Engineer definitely indicates that the Department of Interior construed that Act as requiring the plaintiff to comply with the state laws in such matters. But counsel urges that section 383, supra, cannot be so construed because that section was enacted in 1902 before the 1903 legislature created the office of State Engineer and provided for an appeal from his decisions to the district court. Such a system must have been in the contemplation of Congress in enacting section 383, supra, for there were other states which had similar provisions for appeal to the courts even when this section was enacted including Nebraska, South Dakota, Colorado and Wyoming[13]. Congress certainly did not contemplate that

[13] Kinney on Irrigation and Water Rights, Sections 1342 and 1343, pages 2430 to 2441, *Farm Investment Company* v. *Carpenter*, 9 Wyo. 110, 61 P. 258, Wyoming State Constitution, Article 8.

the Secretary of Interior would only comply with the laws as they existed at the time.

In answer to the state's contention that it would be unfair for the United States to be a law unto itself and administer its water rights as its administrative officers saw fit, counsel suggests that regardless of the result of this action, eventually the United States will litigate all the questions raised or suggested in the appeal to the district court. Under our holding in this case, such a suit will be necessary regardless of the outcome of this case unless the district court should find that there is no reason to believe that any such change could be effected without impairing rights of others for the approval of such an application would not determine any question except that the United States could proceed to change the diversion place of such waters only to the extent that it can do so without impairing the rights of others.

We, therefore, conclude that the district court has jurisdiction to proceed with the review of the Engineer's decision and this application for such a writ is denied.

WOLFE, C. J., and McDONOUGH, and HENRIOD, JJ., concur.

CROCKETT, Justice (concurring).

I concur on the grounds stated in the opinion of Mr. Justice Wade, that the Federal Government has voluntarily submitted itself to the jurisdiction of the Utah tribunals by filing its application, and the Federal statute requires the Secretary of the Interior to proceed in conformity with State law which embraces the full procedural requirements of the State law including the review on appeal. Had the ruling of the State Engineer been adverse to the Government, it is beyond peradventure of doubt that the Government would have claimed the right to seek a reversal on appeal. It would be anomalous indeed if the Government could claim the benefit of a ruling of the State Engineer and then not be subject to having the ruling reviewed by the District Court on appeal as provided by statute.