SANPETE COUNTY WATER
CONSERVANCY DISTRICT,
Plaintiff and Respondent,

v.

PRICE RIVER WATER USERS ASSOCIATION and Carbon Water Conservancy District, Defendants and Appellants.

No. 17712.

Supreme Court of Utah.

July 29, 1982.

E.J. Skeen of Skeen & Skeen, Salt Lake City, Stanley V. Litizzette, Helper, for defendants and appellants.

Arthur H. Nielsen, Clark R. Nielsen and Earl Jay Peck of Nielsen & Senior, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants appeal a declaratory judgment holding them bound by the terms of a 1943 tripartite contract among the United States Bureau of Reclamation (Bureau), defendant Carbon Water Conservancy District and Price River Water Conservancy District, predecessor to defendant Price River Water Users Association, and of a 1944 repayment contract between the former two parties.

In 1933, the Bureau prepared a water storage plan known as the Gooseberry Project, which called for the creation of a reservoir on Gooseberry Creek, a tributary of the Price River, and for diversion of Gooseberry Creek water through a transmountain tunnel into the Sanpete County area. At that time, Price River Water Conservancy District and defendant Carbon Water Conservancy District (hereinafter referred to as defendants although the former was actually the predecessor in interest to defendant Price River Water Users Association) held water rights in Gooseberry Creek, storing this water in the privately owned Scofield Reservoir several miles downstream from the proposed diversion point.

As the Bureau prepared to carry out the Gooseberry Project, it became aware that the Scofield Dam was deteriorating and becoming dangerous and began to consider reconstructing the Scofield Dam in connection with the Gooseberry Project. In 1943, the Secretary of the Interior recommended that the Scofield Dam reconstruction be given priority over the Gooseberry Project and the Bureau entered into the tripartite contract with defendants, conditionally promising to undertake such reconstruction. As part of the consideration for this reconstruction contract, defendants subordinated their water rights in Gooseberry Creek to the right of the Bureau to divert water for the Gooseberry Project at such time as the latter project might be completed. A second contract between the Bureau and defendant Carbon County Water Conservancy District specified the terms for payment of additional consideration to the Bureau.

Although the Bureau reconstructed the Scofield Dam according to its agreement with defendants, the Gooseberry Project never materialized. In 1975, the Bureau assigned to plaintiff three pending applications for water rights relating to the proposed project. The purpose of the assignment, as stated in the parties' assignment contract, was to allow plaintiff to keep the water applications current and to pursue any litigation which might be necessary in order to preserve the status of such applications. The assignment contract further provided that the applications would revert to the Bureau at such time as the Utah State Engineer might grant the requested rights and that plaintiff would reassign the applications to the Bureau before that time upon request.

Following the assignment, defendants allegedly informed plaintiff that they no longer considered themselves bound by the provisions of the original contracts between themselves and the Bureau. Fearing that uncertainty concerning the effect of these contracts might interfere with its efforts to obtain financing for the Gooseberry Project, plaintiff brought this declaratory judgment action for an adjudication of its

rights as a partial assignee under the contracts. Shortly thereafter, the Bureau, which originally had been made a party to the suit, was dismissed from the action pursuant to a stipulation of the parties.

At trial, defendants did not dispute the validity of the contracts in question, but claimed that plaintiff had no standing to bring a declaratory judgment action because it was not a party to those contracts. Defendants further claimed that the Bureau, which was no longer a party to the suit, was an indispensable party without whom no rights under the contracts could be adjudicated. Finally, defendants denied the existence of any justiciable controversy. The trial court found these objections to be unjustified and proceeded to declare the contracts "valid and subsisting . . . and . . . binding on the defendants."

On appeal, defendants again raise the issues of lack of standing, absence of an indispensable party and absence of a justiciable controversy. In addition, defendants charge the trial court with having improperly relied on an estoppel theory in reaching its judgment. We will address these issues individually.

I. Standing

 Defendants contend that plaintiff, which was not a party to the original tripartite and repayment contracts, lacks standing to sue for a declaration concerning their validity. According to defendants, plaintiff's 1975 assignment agreement with the Bureau did not confer upon plaintiff any interest under the earlier contracts and plaintiff therefore has no right to request a declaration concerning the effect of those contracts.

In plaintiff's 1975 assignment contract with the Bureau, plaintiff received the Bureau's interest in three applications for water rights above the confluence of Gooseberry Creek and Cabin Hollow Creek. The contract described the purpose of the assignment as "perfecting and maintaining these rights in good standing for the Gooseberry Project and for the Scofield Project" and stated:

The water made available under these rights will be used exclusively on the Gooseberry Project and the Scofield Project for project purposes in accordance with the Tripartite Agreement among the United States, Carbon Water Conservancy District, and the Price River Water Conservation District (now the Price River Water Users Association).

A final condition to the assignment provides:

[Plaintiff] agrees that these rights are assigned, to-wit, so long as they are expeditiously and in good faith pursued before the necessary administrative and judicial bodies in order to establish their validity.

Plaintiff's success in "perfecting and maintaining" the applications assigned by the Bureau as required by the above contract depends entirely on the eventual success of the Gooseberry Project. If that project should fail to materialize, the whole purpose behind both the water applications and the assignment itself would be defeated. Moreover, a declaratory judgment concerning the status of the tripartite and repayment contracts may directly affect the fate of plaintiff's water applications, inasmuch as defendants, in those contracts, transferred to the Bureau the contingent priority rights in the water above the Gooseberry Creek-Cabin Hollow Creek confluence which constitute the basis of plaintiff's applications. Plaintiff thus brings the present action in furtherance of the success of its water applications and of its obligation to pursue such applications "before the necessary administrative and judicial bodies" in order to establish their validity.

The Utah Declaratory Judgments Act, under which plaintiff brings this action, provides in part:

*Any person interested under a . . . written contract, or whose rights, status or other legal relations are affected by a . . . contract . . . ,* may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder.[1]

1. U.C.A., 1953, 78–33–2.

In order to establish standing to bring suit under the Declaratory Judgments Act, Utah cases require that a party demonstrate "a substantial interest in the subject matter of the litigation"[2] or an interest not held by the public in general.[3] In determining whether such an interest exists, we must construe liberally the terms of the act in accordance with the language of the following section:

> This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and [it] is to be liberally construed and administered.[4]

We hold that the Bureau's assignment of water applications to plaintiff and plaintiff's promise to "perfect and maintain" such applications give plaintiff the "substantial interest" required by the Declaratory Judgments Act. Because plaintiff's status as assignee affords it sufficient standing to bring the present action, we need not determine whether plaintiff is, in addition, a third-party beneficiary of the contracts as it alleges.

## II. Absence of the United States Bureau of Reclamation as a party

Defendants argue that the Bureau, as a party to the original tripartite and repayment contracts, was indispensable to this action and that the trial court could make no adjudication concerning the validity of such contracts in its absence. However, the trial court did not purport to make any declaration concerning the rights of the Bureau under the above contracts. In fact, the court expressly stated:

> This Judgment shall not be construed, and is not intended, to affect in any manner any rights or interest of the United States of America in the subject matter involved in this litigation.

The issue of the validity of the tripartite and repayment contracts as they pertain to the Bureau is *res judicata*. Immediately following the execution of the latter contract, defendants, pursuant to a promise contained therein, filed an action in the Seventh Judicial District Court in order to obtain an adjudication of the validity of these contracts. That court declared, in a decree dated June 16, 1944:

> [S]aid [repayment] contract is legal and valid as an act of the Carbon Water Conservancy District and ... said contract is binding in all respects as therein provided upon said district.
>
> ... [S]aid [tripartite] contract ... was duly confirmed, ratified, and approved by the electors of Carbon Water Conservancy District and is a legal and valid contract binding in all respects as therein provided upon said district.

No known events have occurred since the time of the Seventh District Court's judgment to alter the rights or responsibilities of the parties under the contracts in question. Nor, according to the record, has any of these parties sought to deny its responsibilities under these contracts. The Bureau, represented by its regional director, Nelson W. Plummer, recently reaffirmed its own recognition of the validity of the contracts in an affidavit received in evidence by the court. Likewise, counsel for defendants acknowledged in an evidentiary hearing before the trial court:

> [W]e don't contend that that [Seventh District] confirmatory proceeding was wrong or that the contracts were never valid or they're [sic] not valid now, as to the parties. I think there is no question about that....
>
> * * * * * *
>
> ... There is no issue before Your Honor as to the validity of the repayment contract or the Tripartite Contract. It's a question of whether the plaintiff is in a position to sue ....

---

**2.** *Main Parking Mall v. Salt Lake City Corp.,* Utah, 531 P.2d 866 (1975).

**3.** *Baird v. State,* Utah, 574 P.2d 713 (1978); *Lyon v. Bateman,* 119 Utah 434, 228 P.2d 818 (1951).

**4.** U.C.A., 1953, 78–33–12. See *Salt Lake County v. Salt Lake City,* Utah, 570 P.2d 119 (1977); *Lyon v. Bateman,* n. 3, *supra.*

■ By declaring the contract to be valid and binding against defendants, the trial court adjudicated no new issue with respect to the rights of the Bureau. It merely confirmed the position taken by all parties to the contracts in favor of the validity of such contracts. The purpose of Rule 19(a), Utah R.Civ.P., which requires the joinder of indispensable parties as a condition to suit, is to guard against the entry of judgments which might prejudice the rights of such parties in their absence.[5] In the present case, the declaratory judgment of the trial court has no prejudicial effect upon the rights of the Bureau and, in fact, supports the official position taken by its regional director as to the two contracts in question.

Defendants argue, without explanation or citation to authority, that by bringing the present suit, plaintiff intended to have itself adjudicated as "successor to the United States" under its tripartite contract and as "entitled to benefit from the reservations contained in the contract." Defendants appear to suggest that the declaratory judgment may have transferred to plaintiff some of the Bureau's rights under the tripartite contract and that joinder of the Bureau was therefore necessary in order to protect its interest. Defendants' argument finds possible support in the phraseology of paragraph 3 of the declaratory judgment, which reads:

> Plaintiff is a third party beneficiary and entitled to the benefits of and enforce [sic] the provisions of said contracts relating to the "Gooseberry Plan", particularly as those provisions are applicable to the rights and obligations of plaintiff as set forth in its agreement with the United States dated July 22, 1975.

■ As discussed in Part I, above, the trial court's classification of plaintiff as a third-party beneficiary of the tripartite and repayment contracts was not a necessary part of its judgment, since plaintiff's assignee status gives it standing to sue. Therefore, the court's judgment gives plaintiff no rights under the tripartite contract other than those conferred by its assignment contract with the Bureau. In order to clarify the fact that the judgment did not purport to transfer to plaintiff any of the Bureau's rights under the tripartite contract beyond those described in the assignment agreement, we modify the quoted paragraph as follows:

> Plaintiff is a third party beneficiary and entitled to *receive* the benefits of and enforce the provisions of said contracts relating to the "Gooseberry Plan", particularly as those provisions are applicable to the rights and obligations of plaintiff as set forth in its agreement with the United States dated July 22, 1975.

With the above clarification, the judgment clearly infringed on none of the Bureau's rights under the contracts in question and was not invalidated by its absence as a party.

III. Absence of a justiciable controversy

■ Defendants contend that no justiciable controversy exists in this case because of the fact that the contractual water rights which form the basis of plaintiff's applications are contingent on construction of the Gooseberry Project, which construction has not begun and may never take place. Defendants argue that the issues decided by the trial court were therefore hypothetical or abstract in nature instead of bearing upon real interests of the parties.

This Court has held that the existence of a justiciable controversy does not depend on a showing that the opposing interests giving rise to the controversy are perfected or immediately exercisable. In *Whitmore v. Murray City*,[6] the plaintiff sought a declaratory judgment concerning the priority of his water rights as against those of the defendant city. The defendant argued that declaratory judgment was improper because the plaintiff had not yet constructed facilities with which to make use of the water rights and had not yet met certain statutory prerequisites to perfection of

---

**5.** See *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Francis v. United Technol-* *ogies Corp.,* 458 F.Supp. 84 (N.D.Cal.1978), interpreting the equivalent federal rule.

**6.** 107 Utah 445, 154 P.2d 748 (1944).

those rights. This Court responded to the defendant's contention as follows:

> We can find no merit to this contention. In this case the plaintiff will be put to considerable expense in perfecting his works so as to be able to put the water to a beneficial use. It is very important to him to obtain a determination as to the priority of his right when it is perfected in relation to defendant's rights which apparently conflict, before he makes these expenditures. In *Gray v. Defa,* 103 Utah 339, 135 P.2d 251, 254, this court said a declaratory judgment is a proper remedy: "whenever it will serve a useful purpose in settling the uncertainty and insecurity giving rise to the proceeding."
>
> In the instant case the uncertainty which the court is asked to settle is whether plaintiff's right when he appropriates the water will be prior to defendant's right. Although it is true that plaintiff does not and cannot have a right to the use of the water until he has completed his works and put it to a beneficial use, nevertheless, the right to proceed and acquire this right by complying with the statutory requirements is a valuable right. . . .
>
> . . . The fact that it is possible for a plaintiff to lose a right which he has at the time suit is commenced is no reason for not entertaining the action.[7]

In the present case, plaintiff has shown a significant interest in obtaining a present declaration concerning its own rights as against those of defendants under the tripartite and repayment contracts, an issue not previously litigated. As discussed in Part I, above, plaintiff seeks resolution of this issue in performance of its duty to "perfect and maintain" its water applications under its assignment agreement with the Bureau. In addition, plaintiff occupies a position similar to that of the plaintiff in *Whitmore v. Murray City* in that its water rights cannot actually be perfected without the expenditure of large amounts of money, time and labor for construction of appropriate facilities. As with the plaintiff in that case, "it is very important to [plaintiff] to

obtain a determination as to the priority of [its] right when it is perfected in relation to [defendants'] rights which apparently conflict, before . . . these expenditures [are made]." The success of plaintiff's efforts to arrange financing for the Gooseberry Project may also depend on resolution of the present uncertainty concerning water priorities.

As discussed in Part I, above, the Declaratory Judgments Act mandates that its provisions be liberally administered in order to resolve uncertainties surrounding legal rights.[8] Because of the substantial present interest of plaintiff in the resolution of such uncertainty, we hold that a justiciable controversy exists and that the declaratory judgment of the trial court "will serve a useful purpose in settling the uncertainty and insecurity giving rise to the proceeding," as required by the cited *Whitmore* and *Gray* cases.

IV. The trial court's finding of estoppel

Defendants finally attack the second paragraph of the trial court's judgment, which reads:

> Defendants having accepted and received the benefits of such Tripartite Agreement and the Repayment Contract, are estopped to deny that said contracts are no longer valid and enforceable against defendants and particularly the obligation that the Scofield Dam and Reservoir shall be operated in accordance with the Gooseberry Plan[.]

Defendants argue that plaintiff failed to raise the issue of estoppel in the pleadings and that it is therefore precluded from doing so on appeal.

The trial court's declaration concerning defendants' obligations with respect to the Gooseberry Project did not rest principally upon a theory of estoppel. Rather, the court appears to have relied upon statements of defendants' own counsel and upon the absence of evidence suggesting any alteration of defendants' clear obligations under the contracts, as shown by the following findings of the court:

---

**7.** *Id.* at 452, 453, 154 P.2d at 751.

**8.** See n. 4, *supra,* and accompanying text.

**1308**

20. As of the date of such assignment [to plaintiff], the United States considered the provisions of the Tripartite Agreement as in full force and effect; nor has the United States, since the execution of the said Tripartite Agreement and repayment agreement herein referred to, done anything to abrogate, rescind, waive or repudiate the provisions thereof or to release Defendants or either of them from their obligations thereunder.

21. In his oral argument before this Court on February 4, 1981, defense counsel acknowledged that the pertinent provisions of the Tripartite Agreement as regards the Gooseberry Project were binding upon the defendants Carbon Water Conservancy District and the predecessor in interest of the defendant Price River Water Users Association. The same reservations and limitations are contained in the repayment contract of February 28, 1944.

22. There is nothing in the record that would support a finding or determination that the provisions of the agreements referred to in Finding No. 21 are no longer valid or binding, or that any rights or obligations thereunder have been altered or abrogated.

The preceding findings, even in the absence of any finding concerning estoppel on the part of defendants, would adequately support the trial court's conclusions concerning defendants' continued obligation under the tripartite contract. Because the trial court's estoppel theory does not constitute a necessary part of its declaratory judgment, we need not address the propriety of the court's use of estoppel terminology.

We affirm the declaratory judgment of the trial court as modified above.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.