[No. 23403. Department Two. January 28, 1932.]

AUGUSTIN HABERMAN *et al., Respondents,* v. OLIVE SANDER *et al., Appellants.*[1]

[1]Reported in 7 P. (2d) 563.

454

*F. A. Kern* and *Short & Short,* for appellants.

*D. V. Morthland* and *Floyd Foster,* for respondents.

BEALS, J.—This litigation involves the waters of Wilson creek, located in Kittitas county, and is one phase of a legal battle which has been waged intermittently for over forty years over the waters of that rather inadequate stream. Wilson and Nanum creeks rise in the mountains north of the city of Ellensburg, and flow in a generally southerly direction to a point

where they unite and form one stream for more than a mile, when they separate at a place known as "The Forks," from which point Nanum creek flows southeasterly and Wilson creek southwesterly. The waters of both creeks have long been appropriated in their entirety, and used for irrigation, mechanical or demestic purposes. The lands with which we are here concerned border on Wilson creek below the Forks.

During the year 1871, Carl A. Sander, whose widow, Olive Sander, is one of the parties defendant to this action, settled upon land on Wilson creek about four miles below the Forks. He later acquired other land in this vicinity, his widow now owning a tract approximately 880 acres in extent. Appropriations of water from Wilson creek and application of the water to beneficial uses in connection with the Sander land were made as rapidly as possible, and the lands were brought to a high state of cultivation. From time to time, other persons acquired lands higher up along the creek, and sought to divert therefrom water to be used for various purposes in connection with the improvement or irrigation of the property.

Conflicting claims to the water have resulted, from time to time, in considerable litigation, dating back to the year 1889, when Mr. Sander instituted an action against J. B. Jones, Augustin Haberman, this plaintiff, *et al.,* for the purpose of enjoining interference with his water rights by diversions from the stream made by different persons owning land along the water course between Mr. Sander's land and the Forks. This action resulted in a decree awarding Mr. Sander nineteen hundred inches of water, awarding water rights to other riparian owners, and fixing priorities and other rights. An appeal attempted to be taken from the decree was dismissed by this court. *Jones v. Sander,* 2 Wash. 329, 26 Pac. 224.

During the year 1902, Mr. Sander and another party, seeking further protection of their water rights, commenced an action against a large number of defendants, in which proceeding Mr. Sander was awarded thirteen hundred inches of water for irrigation purposes, and four hundred inches for milling. On appeal to this court, the judgment of the superior court was affirmed. *Sander v. Wilson,* 34 Wash. 659, 76 Pac. 280.

In a later action, Mr. Sander was awarded, as against a considerable number of defendants, twelve hundred eighty inches of water, which judgment, on appeal to this court, was affirmed. *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489.

During the year 1917, judgment of dismissal was entered in an action instituted against Mrs. Sander by one William H. Rader, in which action the waters of Wilson creek were the subject of the litigation, the judgment having been entered upon the ground that the matters pleaded in the complaint were *res judicata.* From the judgment of dismissal, Mr. Rader appealed to this court, the order of the lower court being by this court affirmed. *Rader v. Sander,* 100 Wash. 403, 171 Pac. 257.

Plaintiff Augustin Haberman settled on Wilson creek during the year 1882, approximately eleven years after the initiation of Mr. Sander's rights as a riparian proprietor and appropriator. Mr. Haberman was a party defendant to the action instituted by Carl A. Sander during the year 1889, and at least certain of his rights to the use and appropriation of the water of Wilson creek were adjudicated by the decree rendered in that action, the decree containing, *inter alia,* this provision:

·  "Subject to all of the foregoing rights and appropriations (among which was decreed Mr. Sander's right to the use of water as above set forth), the de-

fendants J. H. Thomas, J. H. Crawford and A. Haberman are each entitled to have the waters of said Wilson creek to flow in their accustomed channels to and upon and across their and each of their lands described in their respective answers without any material diminution in quantity or deterioration in quality.''

By his answer in the action last referred to, Mr. Haberman set up his rights as an appropriator of water, but did not allege any claim to the use of the waters of Wilson creek for milling or power purposes.

Because of the recent construction by the United States government of a ''high line'' canal, water has been made available for irrigation purposes to lands adjacent to Wilson creek, and the waters of the creek, in so far as some of the owners of property riparian thereto are concerned, no longer have the same value for irrigation purposes that they formerly possessed.

During the year 1928, Olive Sander leased 580 acres of her lands, together with her water rights (except one hundred inches), to the defendant Phil H. Adams for the years 1929-1931, inclusive. Mr. Adams owns approximately 600 acres of land lying five miles north of the Sander tract and about two miles east of the creek. This land Mr. Adams irrigates through a ditch leading from the combined streams of Wilson and Nanum creeks, above the Forks.

During 1929, Mr. Adams applied to the state supervisor of hydraulics for permission to change the point of diversion of a large portion of the water which Mrs. Sander was entitled to appropriate from the intake on the Sander property to the ditch maintained by him leading from the combined streams. This application was made pursuant to § 7, chapter 122, Laws of 1929, p. 275, which reads as follows:

''Section 39 of this act shall not be construed to prevent water users from making a seasonal or temporary change of point of diversion or place of use of water

when such change can be made without detriment to existing rights, but in no case shall such change be made without the permission of the water master of the district in which such proposed change is located, or of the state supervisor of hydraulics.''

Permission to make the change having been granted, Mr. Adams diverted a considerable portion of the Sander water through his ditch leading from the combined stream, and used so much thereof as he did not sell in irrigating his lands lying east of the creek.

Augustin Haberman and Anne Haberman, his wife, thereupon instituted this action against Olive Sander and Phil H. Adams, for the purpose of restraining them from continuing the diversion of the water, the right to which is owned by Mrs. Sander, into the Adams ditch; damages in the sum of $3,100 being also demanded.

In this opinion, Augustin Haberman will be referred to as though he were the sole party plaintiff.

Mrs. Sander answered the complaint, denying most of the allegations thereof, and alleging, by way of affirmative defenses, the facts upon which are based her rights to appropriate certain of the waters of the creek, together with allegations to the effect that her rights had been fully adjudicated in various prior actions to which Mr. Haberman was a party, and that plaintiff's claims were *res judicata*. Mr. Adams filed a separate answer to the complaint, denying any unlawful diversion of water, and pleading affirmatively matters in substance as set forth in the affirmative defenses of his co-defendant. After a lengthy trial, the court rendered a decree perpetually enjoining defendants from diverting any water from the creek at any point above the Haberman land, and awarding plaintiff nominal damages in the sum of one dollar against

both defendants, together with costs. From this de-
cree, defendants appeal.

Appellant Olive Sander, in the first place, contends
that her motion to dismiss the case as to her should
have been granted, and that, whatever decree might
have been entered against her co-appellant Adams, the
court erred in awarding even nominal damages and
in granting an injunction as against her. Mrs. Sander
argues that she had nothing to do with the diversion,
and that the same was made solely by her tenant, ap-
pellant Adams, and that the evidence shows that she
did not even know that the diversion had been made
until long after the same had taken place. In this con-
nection, respondent's counsel during the trial made the
following statement:

"The plaintiffs will concede in behalf of the defend-
ant, Sander, that no judgment for damages could be
awarded, but in view of the fact that she is the owner
of the legal title to the rights involved, we think she
is a necessary party to the action, and in order to make
effectual any restraining order injunction, under the
terms of this lease which she gave, it would be neces-
sary that the injunction in form should run against
her, otherwise I think it would be ineffectual."

Appellant Sander argues that she cannot be held
liable for the tort of her tenant simply because of her
ownership of the property, including the water rights.

This court will not concern itself over the mat-
ter of the propriety of the award against Mrs. Sander
of nominal damages in the sum of one dollar. If the
injunction properly ran against Mrs. Sander, the de-
cree would carry costs against her, and the award of
nominal damages is immaterial.

By her answer to respondent's complaint, Mrs.
Sander, after denying most of the allegations of the
complaint, pleaded at length her rights to the water,
and prayed that the action be dismissed. She did not,

as she might have done, disclaim any right or claim on her part to divert the water to which she was entitled at a point other than on her own land. Mrs. Sander elected to resist the issue tendered by respondent to the effect that the change in the place of diversion of the water which she had the right to appropriate was unlawful and in derogation of respondent's rights.

Assuming that her position is correct, and that no judgment could be rendered herein against her for damages occasioned by the tort of her tenant, we hold that, in so far as respondent's right to an injunction was concerned, Mrs. Sander was a proper party to the action, and that, in the absence of any disclaimer on her part, if it be determined that the diversion of the water into the Adams ditch was wrongful, the injunction granted should properly embrace within its terms appellant Olive Sander, who, in that case, would be jointly liable to a judgment for costs.

It seems clear that appellant Olive Sander enjoys a prior right in the waters of Wilson creek to the extent of an appropriation of approximately one thousand inches thereof, the exact amount being, for the purposes of this case, unimportant. The principal question presented on the appeal, then, is: Have appellants the right to divert from the creek at a point above respondent's land all or a portion of the water which appellant Olive Sander enjoys the right to appropriate? Appellants correctly state that the answer to this proposition depends upon whether or not such a diversion can be made without detriment to the legal rights of respondent.

It may be assumed that a senior appropriator may change his point of diversion, provided that such change does not infringe upon existing vested rights. Respondent's rights in and to the waters of Wilson

creek were adjudicated in 1890 by the decree in the case of *Sander v. Jones, supra.* The various rights fixed by this decree were extremely complicated, respondent being awarded a certain priority in the use of three inches of water; then, after other intervening rights, an additional eleven inches; followed, after another interval, by ten inches; and, after many other rights were established, two additional awards of ten and fifteen inches, respectively.

The decree also contains the provision above quoted, to the effect that respondent and others are entitled to have the waters of Wilson creek "flow in their accustomed channels." Appellants argue that this provision of the decree means no more than that respondent enjoys the right to the flow of only so much of the creek as remains after all the rights and appropriations adjudged by the decree have been filled, basing their argument upon the words, "subject to all the foregoing rights and appropriations," contained in the portion of the decree now under consideration.

Appellants, in their brief, state that the total appropriations of water awarded by the decree in the case of *Sander v. Jones* are so large that only at flood water is the stream sufficient to fill them all. It is apparent, then, that the flowage right granted by the decree to respondent would be practically worthless if the senior appropriators may at will move their points of diversion up the creek. Respondent has for many years made use of the waters of the creek for the purpose of operating a mill and various appliances incident to the use of his farm. The testimony shows that respondent has grown an orchard adjacent to the creek, and has used the waters thereof for domestic use and for his livestock. Testimony introduced by respondent indicates that the land in his vicinity has a gravelly subsoil foundation, with the result that the

waters of the creek percolate through the same, making it possible to grow some crops from natural subirrigation. Witnesses for respondent also testified that springs, from which respondent piped water to his house, were supplied or reinforced from the creek.

Without closely analyzing all of this testimony, we are clearly of the opinion that the flowing of the creek through respondent's property is of great advantage to respondent, and that the diversion of the Sander water from the creek at a point above respondent's land would result in substantial damage to respondent.

Appellants argue that, because respondent did not, in the case of *Sander v. Jones, supra,* plead that he was using the waters of the creek for power purposes, he cannot now urge that fact in support of his contention here. It appears that other parties to that action did put in issue their milling rights, and that the same were protected by the decree. It is difficult to see why the provision for flowage rights in favor of respondent, above quoted, is not, as far as appellants' rights are concerned, sufficient to protect respondent in his right to use the water for mill or power purposes. In any event, we are satisfied that this portion of the decree is effective for the purpose of protecting respondent in his enjoyment of the flow of the creek across his lands.

Appellants argue that any infringement on their part of respondent's rights is unsubstantial, and that, in view of the recognized policy of the law that, in arid portions of the state, water should be made to perform its highest duty, the courts will not interfere with appellants' diversion of the water in accordance with their desires, even though respondent thereby suffers some damage.

We are in accord with the general principle that, in such regions as that with which we are here concerned,

water is of great value and, where possible, should be put to its most important and beneficial use. It nowhere appears, however, from the record before us, that any of the water of Wilson creek is wasted; quite the contrary appears. Reasonable minds may well differ as to what is in fact, the highest or most efficient purpose to which water may be put. Each property owner enjoying the rights of use or appropriation from a stream will naturally believe that the use to which he puts the water is the highest use and the most important. It would seem that, if appellants may change the point of diversion of the Sander water, a dangerous precedent will be set, which might well result in a promiscuous scramble by water appropriators to move their intakes upstream, with the result that many evils would follow.

On the facts, we are satisfied from the evidence that the diversion of water into the Adams ditch resulted in substantial damage to respondent. The result of the diversion was reflected in a lessening of their domestic water supply, in the inferior quality of their orchard fruit, and in the effect upon trees growing upon respondent's land.

Persons acquiring land upon Wilson creek above the Sander land, even though their claim to the waters of the creek may be junior to the Sander right of appropriation, acquired some rights in the stream and the flow thereof, in connection with their land ownership. *Crook v. Hewitt*, 4 Wash. 749, 31 Pac. 28; *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Sander v. Wilson*, 34 Wash. 659, 76 Pac. 280; *White Bros. & Crum Co. v. Watson*, 64 Wash. 666, 117 Pac. 497, 44 L. R. A. (N. S.) 254; *Miller v. Baker*, 68 Wash. 19, 122 Pac. 604; *State ex rel. Davis v. Superior Court*, 84 Wash. 252, 146 Pac. 609.

464

Appellants argue that, because the record contains testimony to the effect that respondent, or persons acting for him, and other persons owning property riparian to Wilson creek, had at times unlawfully appropriated water belonging to Mrs. Sander, such parties are not entitled to relief from a court of equity by way of such an injunction as was granted by the decree appealed from. In this connection, we do not find in the record anything which would justify the denial to respondent, for the reasons just stated, of relief by way of injunction, to which he would otherwise be entitled.

Appellants also argue that, because there was diverted into the Adams ditch no more than half of the Sander water, the right to make such diversion should not be restrained. The underlying principle upon which this case is determined applies to such a diversion as was made, and the difference relied upon by appellants is one of degree only.

■ The temporary permit granted appellants June, 1929, by the state hydraulic engineer, was issued without notice, and is ineffective in this proceeding, as the statute (Laws 1929, p. 275, § 7) provides that the permit authorizing temporary change in the point of diversion may be granted "if the change in the place of use can be made without detriment or injury to existing rights." In the case at bar, we hold that the change cannot be made without infringing respondent's vested and adjudicated rights.

The trial court correctly enjoined appellants from diverting water from Wilson creek into the Adams ditch, and the decree appealed from is affirmed.

TOLMAN, C. J., MAIN, HOLCOMB, and MILLARD, JJ., concur.