## WHITMORE v. WELCH et al.

No. 7063.   Decided January 21, 1949.   (201 P. 2d 954.)

See 67 C. J., Waters, sec. 407; 56 Am. Jur. 741. Constitutionality of statutes affecting riparian rights, note, 56 A. L. R. 277.

*W. W. Ray* and *David T. Lewis,* both of Salt Lake City, for appellants.

*Beverly S. Clendenin,* of Salt Lake City, *Wendell C. Day,* of Murray, and *Edward W. Clyde,* of Salt Lake City, for respondents.

McDONOUGH, Justice.

Plaintiffs appeal from a judgment of the district court whereby the application of defendant, C. J. Welch, to appropriate water for power purposes, which plaintiffs protested, was approved with a conditional modification of the point of return to avoid a present conflict with protestant's prior filing. On a trial de novo, the district court rendered substantially the same decision as that made by the state engineer.

The facts pertaining to this controversy may be summarized as follows: In 1920, Utah Granite and Marble Company made a filing on Little Cottonwood Canyon creek for power purposes. This filing was acquired by plaintiff

executor's testator in 1928. We shall refer thereto hereafter as the Whitmore filing. In 1940, defendant C. J. Welch, then mayor of Midvale, together with a group of other citizens, investigated the possibilities for a municipal power plant. The municipal corporation had no engineer, and no funds for such an investigation, and therefore took no official action. Welch however, acting on the advice of the city attorney and with the acquiescence of other municipal officials, financed the investigation, engineer's reports, and water filings. The filings he made were in his own name as an individual and at his own expense. He intended to transfer the same to Midvale Municipal Corporation as soon as acceptable to such corporation.

The Welch application filed on October 16, 1943, was for the appropriation of 22 second feet of water for power purposes. It is the application in controversy here. Like the prior Whitmore filing, it was to appropriate water for a non-consumptive use—for power purposes. The point of diversion of the Welch application is more than 2 miles upstream from the point of diversion of the Whitmore filing. It is the described point of return of the Welch application which gives rise to the alleged conflict with the Whitmore filing. Said point, described in linear measurements from the section corner, is some 2000 feet down-stream from the Whitmore point of diversion.

This application with such conflict was duly advertised, and when the Whitmores discovered the apparent conflict between the proposed point of return and their point of diversion, on July 13, 1944, they filed protest on each of the following grounds: (a) That said application conflicts with the Whitmore filing; (b) that the proposed power development would exceed $200,000 and would therefore not be economically feasible; and (c) that said C. J. Welch made said application for purposes of speculation and monopoly. On the same date, to wit, July 13, 1944, plaintiff Rich Whitmore filed an application to appropriate 15 second feet of water for power purposes, which application

would conflict with the Welch application. During the previous month, and, hence subsequent in time to the Welch application, plaintiff executor filed an application to change the point of diversion of the prior Whitmore filing.

In the meantime, C. J. Welch found that the municipality of which he was mayor, would not accept the filing he had made with a view of having the city build a power plant. Whereupon, he, with the knowledge and approval of other municipal officials, transferred and assigned the application he had filed in 1943 to the defendant Murray City Corporation for the sum of $400, being approximately the aggregate of his actual costs and expenses incurred in connection therewith. He stated that he had made the application for the purpose of a municipal power plant, and while he intended that his own municipality should have the benefit of the application, when he found out that his own city would not accept it, he transferred it to Murray City. He testified that he did not at any time intend to realize any profit to himself, and there is no evidence that he made any profit. After the assignment to Murray City Corporation, Welch ceased to have any further interest in the application.

After hearing on the protest filed by plaintiffs, the state engineer approved the Welch application subject to qualifications with respect to the point of return. Inasmuch as the decree of the district court follows substantially the pattern of the decision of the state engineer, we quote the pertinent provisions of the decree:

"It is * * * ordered, adjudged and decreed that said application should be and it is hereby approved subject, however, to prior existing rights, *and subject to the condition that unless and until it is determined by a competent tribunal that the rights of the plaintiff, Rich Whitmore, as trustee of Application No. 8662, Certificate No. 2107 (corrected) have been lost by reason of nonuse, Murray City, under said Application No. 15552, must return the water at the present point of intake under said Application No. 8662 and Certificate No. 2107, (corrected)*." (Italics added.)

In the decision of the state engineer the point of intake for the Whitmore diversion was incorrectly described. Said error was eliminated by the judgment of the district court.

On this appeal the plaintiffs make the following contentions: (1) That the Welch application should have been denied on the ground that it was speculative and monopolistic. (2) That the authority of the state engineer is limited to either approval or rejection of an application, and that the Welch application was required to be denied by reason of conflict in the point of return with the prior Whitmore point of diversion. (3) That before approval of the Welch application with a change with respect to the point of return, the state engineer had a duty to require the filing of a change application and to republish such application as modified, to establish the priority date as of the filing of the change application. (4) The proviso in the decree (italicized hereinabove) was unauthorized in that it would operate to allow the assignee of the Welch application to acquire a water right in the event of loss of such right by nonuse, when a lost right results in a reversion to the public and necessitates a new filing to apply the water to beneficial use.

The first contention requires only brief discussion. The Welch application was not designed to monopolize water of the stream either for power purposes or for any other use. The filing covered a relatively small segment of the stream, and there is no evidence that the application was for substantially more water than essential to the capacity of the contemplated power plant. Nor can it be said that the application was made for speculative purposes. Welch testified without contradiction that he intended no profit to himself, and that he made the filing for a municipal power plant; and while he intended Midvale to be the beneficiary of the application, when his own municipality declined to proceed with the project, he transferred the application to Murray City Corporation with the approval of the other Midvale officials,

because Murray desired to erect such a power plant. He sold his rights for practically what he spent. Apparently, he charged nothing for his own efforts and time.

The second contention of appellants is that the authority of the state engineer is limited to approval or rejection of a claim as filed; that if the application conflicts with existing rights, the application must be rejected. The third contention is that where there is a conflict even by reason of impingement of a point of return upon the point of diversion in the prior filing, such conflict with respect to the point of return cannot be eliminated except by the filing of an application to amend and the republication of notice to water users. Since these two contentions involve the construction of statutes, they will be discussed together.

Section 100-3-6, U. C. A. 1943, which was in effect at the time of the filing of the Welch application, is referred to in appellants' argument. It reads as follows:

"When an application is filed in compliance with this title the state engineer shall at the expense of the applicant, to be paid in advance, publish in a newspaper having general circulation within the boundaries of the river system or near the water source from which the appropriation is to be made a notice of the application showing by whom made; the quantity of water sought to be appropriated; the stream of water source from which the appropriation is to be made and at what point on the stream or water source; the use for which it is to be appropriated and by what means; which notice shall be published at least five times, once a week for a period of five successive weeks. *Clerical errors, ambiguities and mistakes which do not prejudice the rights of others may be corrected by order of the state engineer either before or after the publication of notice.* After publication of notice to water users, the state engineer may authorize *amendments or corrections* which involve a *change of point of diversion, place or purpose of use* of water, only upon compliance with the provisions of section 100-3-3. Any person aggrieved by an order of the state engineer authorizing any alteration of an application may file an action for review thereof as provided by section 100-3-14." (Italics added.)

Section 100-3-3, provides inter alia:

"Any person entitled to the use of water may change the place of diversion or use and may use the water for other purposes than those

for which it was originally appropriated, but no such change shall be made if it impairs any vested right without just compensation. Such changes may be permanent or temporary. Changes for an indefinite length of time with an intention to relinquish the original point of diversion, place or purpose of use are defined as permanent changes. * * *

"No permanent change shall be made except on the approval of an application therefor by the state engineer. Such applications shall be made upon blanks to be furnished by the state engineer and shall set forth the name of the applicant, the quantity of water involved, the stream or source from which the appropriation has been made, the point on the stream or source where the water is diverted, the point to which it is proposed to change the diversion of the water, the place, purpose and extent of the present use, and the place, purpose and extent of the proposed use and such other information as the state engineer may require. The procedure in the state engineer's office and the rights and duties of the applicant with respect to applications for permanent changes of point of diversion, place or purpose of use shall be the same as provided in this title for applications to appropriate water.

＊　　＊　　＊　　＊　　＊

*"Applications for either permanent or temporary changes shall not be rejected for the sole reason that such change would impair vested rights of others, but if otherwise proper, they may be approved as to part of the water involved or upon condition that such conflicting rights be acquired."* (Italics added.)

Section 100-3-2, U. C. A. 1943, requires the filing of the application in the office of the state engineer, which application must contain specified information, to wit:

"the nature of the proposed use for which the appropriation is intended; the quantity of water in acre-feet or the flow of water in second-feet to be appropriated, and the time during which it is to be used each year; the name of the stream or other source from which the water is to be diverted; the place on such stream or source where the water is to be diverted and the nature of the diverting works; the dimensions, grade, shape and nature of the proposed diverting channel; and such other facts as will clearly define the full purpose of the proposed appropriation. * * * If the proposed use is for developing power, the application shall show the number, size and kind of water wheels to be employed and the head under which each wheel is to be operated; the amount of power to be produced and the pur-

poses for which and the places where it is to be used; also the point where the water is to be returned to the natural stream or source. * * *"

Inasmuch as the statute requires the "point where the water is to be returned to the natural stream or source" to be stated in the application for power purposes, the appellants contend that the point of return is equally as important as the point of diversion, and that if the point of return stated in the application conflicts with or impinges on an existing filing, it is the duty of the engineer to reject such application notwithstanding there may be unappropriated water and the point of diversion does not in any manner conflict with the point of diversion of any other appropriator who has priority. There are two answers to such contention.

Section 100-3-3 provides, as noted, that applications for either permanent or temporary changes

"shall not be rejected for the sole reason that such change would impair vested rights of others, but if otherwise proper, they may be approved as to part of the water involved or upon condition that such conflicting rights be acquired."

If a change application must not be rejected merely because there might be some conflict with vested rights, it would seem to follow that an original application should not be rejected when there is unappropriated water and the only conflict is with respect to the point of return.

Furthermore, our holdings are uniformly to the effect that if there is unappropriated water in the proposed source, an application to appropriate should not be rejected. In *Little Cottonwood Water Co.* v. *Kimball*, 76 Utah 243, 289 P. 116, 118, we held that the state engineer should approve an application to appropriate water *unless*

"it clearly appears that there is no unappropriated water in the proposed source. * * * But if the question is fairly doubtful and there is reasonable probability that a portion of the waters are not

necessary to supply existing rights the engineer should have the power to approve the application and afford the applicant the opportunity for an orderly recourse to the courts, who have the facilities and powers to dispose of the matter definitely and satisfactorily."

The doctrine of this case was reaffirmed in *Rocky Ford Irrigation Co.* v. *Kents Lake Reservoir Co.*, 104 Utah 202, 212, 135 P. 2d 108, 113. In the latter case, we stated that

"unless it appears that the approval of the application will injure vested rights of prior appropriators, the application to appropriate should be aproved."

Sec. 100-3-8, U. C. A. 1943, inter alia, specifies:

"It shall be the duty of the state engineer, upon the payment of the approval fee, to approve an application if: (1) There is unappropriated water in the proposed source; (2) the proposed use will not impair existing rights, or interfere with the more beneficial use of the water; * * *."

No contention is made that there is no unappropriated water in the proposed source, but appellants insist that the proposed use will "impair existing rights" within the meaning of the statute, and, hence, the application should be rejected. But to accord the meaning for which appellants contend, to the second enumerated condition to the approval of an application to appropriate, would place upon such applicant the unwarranted burden of determining precisely the amount of unappropriated water remaining in the proposed source, or in case of a power application, the precise segment of the stream channel available for appropriation. Such is not the construction indicated by the opinion of this court in *Little Cottonwood Water Co.* v. *Kimball,* supra.

Nor do we find merit to the argument of appellants to the effect that the state engineer should have ordered republication of an amended application to appropriate showing a point of return which would eliminate the conflict with appellants' filing. In the first place Sec. 100-3-6, U. C. A. 1943, does not so provide, though it does in effect

require republication where amendments involve a change of point of diversion, place or purpose of use of water. Appellants' argument to the effect that the point of return to the stream channel of the water used for power purposes is equally as important as the place of use would be persuasive if applied to an amendment which would have the effect of applying for a larger use either in amount of water or the distance along the stream channel the applicant proposed to keep the designated amount of water out of such channel. But it is not persuasive when applied to the change here involved. The practical effect of the approval order of the state engineer and the judgment of the court below which in substance confirmed such order, was to reduce the applicant's claim. Publication of the claim as filed would give notice to water users or claimants of the total quantum of water or extent of the stream channel applied for. It consequently would give notice as to any amount or distance included in the total. Under such circumstance the claimed analogy between a change in point of use and point of return loses its force.

Furthermore, the Welch application reveals an ambiguity as to the proposed point of return. While the described point of return as stated in linear measurements in the Welch application is about 2,000 feet downstream from the Whitmore diversion works, an examination of the application discloses that the applicant further particularized said description of the point of return as follows:

"Said point is 250 feet east and up stream from the diversion works of Whitmore Oxygen Co. Plant."

Thus, there appears on the face of the application a statement indicating that applicant did not intend that said point of return conflict with the Whitmore diversion point. There is a conflict in description with respect to the point of return, thus creating an ambiguity which the state engineer would have authority to require the applicant to

correct without republication, under the provisions of Sec. 100-3-6.

The fourth contention of appellants is to the effect that the proviso in the decree which we have italicized, and the corresponding portion of the decision of the state engineer, were made without any authority of law, in that the import of such a proviso is to give the assignee of Welch a pre-emptive right to acquire a water right which might be abandoned in the future by the Whitmores without further application therefor. There is merit to this contention. When a vested right is forfeited by non-use, there is a reversion to the public, and a right to use such water so abandoned can only be initiated by making a new appropriation after the water is available for appropriation. The effect of the proviso as worded in the decree is to grant the assignee of Welch some future right to have the point of return lower on the stream upon the loss of the Whitmore rights. There is no authority of law for any such proviso. Such loss of right in the future could not be presently employed to enlarge the Welch filing. If the right of Whitmore is lost in the future, not until such date of loss or forfeiture will such water be available for appropriation.

In this case no contention was made before the state engineer or the court that the Whitmore right had been lost through abandonment. Indeed, the Welch application, as shown hereinabove, was not made with the intent to appropriate water abandoned by plaintiffs. The purpose undoubtedly was to appropriate water upon which there presently was no valid filing in the office of the state engineer, and to return it to the stream channel at a point which would not conflict with other power filings on the stream.

In holding unwarranted the quoted condition of the judgment relative to possible abandonment of the Whitmore right, we are not unmindful of respondents' argu-

ment to the effect that the state engineer might properly have approved the application as filed, and, consequently appellants cannot complain that he had by the order entered approved it for less than Welch claimed. Counsel point out that the filing in the office of the state engineer of an application to appropriate water does not give the applicant any vested right to the water sought to be appropriated. It is but the initial step, which, if approved, gives the right to complete the appropriation as to such water which is available for appropriation. The applicant may seek to acquire a greater amount of water than that to which he is able to show he is entitled on final proof. But that should await final proof. *Eardley* v. *Terry,* 94 Utah 367, 77 P. 2d 362, *Little Cottonwood Water Co.* v. *Kimball,* supra, and *Duchesne County* v. *Humpherys,* 106 Utah 332, 148 P. 2d 338, are cited in support of these propositions.

Undoubtedly, these assertions correctly state the general propositions of law therein stated; but they have no application to the facts of this case. Assuming the prior Whitmore filing to have been valid at the time of the Welch application, it is perfectly clear that, in so far as the amount of water here involved in concerned, the stream channel between the Whitmore point of diversion and point of return, was not open to appropriation. The question is not, in the words of *Little Cottonwood Water Co.* v. *Kimball,* supra, "fairly doubtful." There is no reasonable probability that, absent abandonment of the prior Whitmore filing, the stream channel involved in the Whitmore power right, was open to appropriation by Welch.

By ruling as we do as to the proviso in the judgment relative to possible abandonment being without authority of law, we are not to be construed as holding or intimating that the state engineer may not approve an application for water alleged to have been abandoned by a prior appropriator. Where such claim of abandonment is advanced, the state enginer should approve the

application, for in such case the question whether there is unappropriated water in the proposed source depends upon determination in a proper proceeding of the fact of legal abandonment, and approval of the application would be a condition precedent to the subsequent claimant asserting a right to the water involved.

The only condition which the state engineer had authority to attach to approval of the Welch application, was that the point of return be far enough upstream from the Whitmore diversion point to avoid a conflict. The district court could impose no conditions other than those which the state engineer had authority to impose.

The cause is therefore remanded to the district court with directions to eliminate the proviso in question, otherwise to approve the Welch application subject to modification of the description of the point of return to remedy any conflict with the Whitmore filing, and, of course, subject to any prior rights. Each party shall bear his or its own costs.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.