296 P.2d 723

**PROVO BENCH CANAL AND IRRIGA- TION COMPANY, a corporation, et al., Plaintiffs and Respondents,**

**v.**

**Harold A. LINKE, as State Engineer of the State of Utah (Successor in office of Ed. H. Watson, former State Engineer of the State of Utah) and United States of America, through its Bureau of Reclamation, Department of the Interior, Defendants and Appellants.**

Nos. 8390, 8391.

Supreme Court of Utah.

May 1, 1956.

E. R. Callister, Jr., Atty. Gen., Robert B. Porter, Asst. Atty. Gen., A. Pratt Kesler, U. S. Dist. Atty., Salt Lake City, for appellants.

Dallas H. Young, Christenson & Christenson, Provo, for respondents.

J. Lee Rankin, Sol. Gen., and William H. Veeder, Atty. Dept. of Justice, Washington, D. C., for the United States.

Fisher Harris, Salt Lake City, amicus curiae.

WADE, Justice.

This appeal involves two applications by the United States of America to the State Engineer to change the place of diversion and use of many water rights acquired by it in the construction of the Deer Creek Reservoir in Provo Canyon. Over the protest of the lower water users the State Engineer approved these applications from which the protestants appealed by commencing this action in the District Court. The District Court rejected the applications and the State Engineer and the U.S.A. appeal from that decision. We must determine whether there was a showing of reason to believe that such changes can be made without impairing vested rights of others.[1] We have twice previously determined questions growing out of this litigation.[2]

In the construction of the Deer Creek Reservoir the U. S. A. acquired certain lands most of which are at times covered by the water stored in such reservoir. It also acquired a maximum total water right of 52.492 second feet which prior thereto had been used to irrigate such lands. In June of 1945, the U. S. A. filed with the State Engineer two applications to change the place of diverson and use of such waters to a place below the mouth of Provo Canyon. During the hearing of the protests of the lower water users before the State Engineer and in the District Court, the applications were reduced from 52.492 second feet to 9.33 second feet which

---

1. See section 73-3-3, U.C.A.1953, and East Bench Irr. Co. v. Deseret Irr. Co., 2 Utah 2d 170, 271 P.2d 449; United States v. District Court, etc., Utah, 238 P.2d 1132; Id., 242 P.2d 774; Lehi Irr. Co. v. Jones, 115 Utah 136, 202 P.2d 892; Whitmore v. Murray City, 107 Utah 445, 154 P.2d 748; Tanner v. Bacon, 103 Utah 494, 136 P.2d 957; American Fork Irr. Co. v. Linke, Utah, 239 P.2d 188; Whitmore v. Welch, 114 Utah 578, 201 P.2d 954; Rocky Ford Irr. Co. v. Kents Lake Reservoir Co., 104 Utah 202, 135 P.2d 108; rehearing denied, 104 Utah 216, 140 P.2d 638; Salt Lake City v. Boundary Springs Water Users Ass'n, 2 Utah 2d 141, 270 P.2d 453; Eardley v. Terry, 94 Utah 367, 77 P.2d 362; Little Cottonwood Water Co. v. Kimball, 76 Utah 243, 289 P. 116; see also Kinney on Irr. & Water Rights Vol. 2, p. 1538; Hutchins The Law of Water Rights, p. 278.

2. United States v. District Court, etc., Utah, 238 P.2d 1132; Id., 242 P.2d 774.

amount the District Court found that under the pre-reservoir conditions was consumed by evaporation and transpiration of plant life without increasing or enhancing the amount of water available to the lower users. We are required to determine only whether the evidence requires the approval of these applications for the change of the place of diversion and use of these 9.33 second feet of water.

The District Court held that these applications must be rejected because more water is lost to plaintiffs since the construction of the reservoir, than the amount of water involved in these applications, by evaporation, plant transpiration and seepage through a fault line under the reservoir. This holding is obviously incorrect.

■■ Since the construction of the reservoir all the water flowing down Provo River above the dam is impounded in the reservoir so that the water which formerly flowed naturally down the river course to plaintiffs' respective diversion places without regulation or artificial controls is now subject to the control of the operators of the reservoir. Under the present system the amount of water which reaches the respective diversion places of plaintiffs and becomes available for their use is largely regulated by the operators of the reservoir and is based on calculation and to some extent on speculations and uncertainties, for there is no way under the new system to demonstrate the exact amount of water which would have been available to the plaintiffs under the old system. However, the reservoir has made much more water available for use below the mouth of Provo Canyon than would have been without it. Out of such water the plaintiffs have the first and prior rights to the use of the amount of water which they would have been entitled to and which would have been available to satisfy their rights under the old system had the reservoir not been constructed, and in determining that amount they are entitled to the benefit of all doubts and uncertainties thereon because such doubts and uncertainties are the result of such changes which were made for the benefit of the inferior right-holders.[3] The

3. East Bench Irr. Co. v. Deseret Irr. Co., 2 Utah 2d 170, 271 P.2d 449; Jackson v. Spanish Fork West Field Irr. Co., Utah, 235 P.2d 918; Tanner v. Humphreys, 87 Utah 164, 48 P.2d 484; Manning v. Fife, 17 Utah 232, 54 P. 111; Crockett v. Jones, 47 Idaho 497, 277 P. 550; In re North Powder River, 75 Or. 83, 144 P. 485, 146 P. 475; Columbia Min. Co. v. Holter, 1 Mont. 296; Vogel v. Minnesota Canal & Reservoir Co., 47 Colo. 534, 107 P. 1108; Haberman v. Sander, 166 Wash. 453, 7 P.2d 563; Strickler v. City of Colorado Springs, 16 Colo. 61, 26 P. 313; Hall v. Blackman, 22 Idaho 556, 126 P. 1047, 1048; Washington State Sugar Co. v. Goodrich, 27 Idaho 26, 147 P. 1073; Farmers' High Line & Reservoir Co. v. Wolff, 23 Colo.App. 570, 131 P. 291; Broughton v. Stricklin, 146 Or. 259, 28 P. 2d 219, 30 P.2d 332; and Hutchins The Law of Water Rights p. 378; Kinney on Irr. & Water Rights 2nd Ed. sec. 870.

amount of water which plaintiffs are entitled to is in no way dependent on nor should it be determined by the amount of water which is lost in the reservoir through evaporation, transpiration, or seepage but is based on the amount of water which they would have been entitled to and would have been available for their use under the old system. Such being the case plaintiffs' vested rights cannot be impaired by the approval of these applications nor does such approval increase the doubts and uncertainties as to the amount of water plaintiffs are entitled to use, for such doubts and uncertainties were created by the construction and operation of the reservoir, not by the change of place of diversion and use of the water.

As an additional reason for denying these applications the District Court held that such change in place of diversion and use is forbidden by the decree in a previous water rights determination suit between the plaintiffs, the predecessors of the U. S. A., and other water users of the Provo River water system. That decree provided that "none of the parties (to such suit) shall change the place of use of said waters so as to cause the seepage or drainage therefrom to be diverted away from the channel of said river or channels, or from the lands heretofore irrigated thereby." The plaintiffs' water rights as lower users were acquired prior in time to the rights of the U. S. A.'s predecessors but in that suit plaintiffs stipulated that the U. S. A.'s predecessors should be decreed the right to the use of sufficient of such waters to satisfy their needs regardless of that fact. The plaintiffs now contend, in accordance with the theory adopted by the trial court, that by such stipulation and decree, against a change in place of use of such waters, if such change was made the plaintiffs would thereupon become entitled not only to the use of the return flow and seepage which would have occurred under the former use but also to the use of the waters which would have been completely consumed under such former use. This conclusion seems to be based on the idea that plaintiffs surrendered a valuable right by such stipulation and that in consideration therefor the parties had agreed and the court awarded to them, in case of change in place of use of any of such waters the right to the use of all of such changed water right, including the part thereof which would have been consumed had such use not been changed, in addition to the rights awarded to plaintiffs by such decree. Such construction of that stipulation and decree is untenable.

The water rights determination decree does not forbid a change in the place of use of such waters. It only forbids such change as will divert the seepage and drainage from such use from the channel of the river or from the lands previously irrigated by such seepage or drainage. It merely expressly limits the right to change the

place of use to the same extent as such right is limited by our statutes and by common law of western irrigation. In other words it simply prohibits such change as will impair the vested rights of others. It deals only with a change which will divert away from the river channel or the lands previously irrigated thereby the seepage and drainage from such use. It does not award to plaintiffs the right to the use of the waters which under the older use would have been completely consumed but merely that they retain the same right to the use of these waters as they would have had if no change had been made. As previously pointed out this is exactly the rights which they have under the change caused by the construction of the reservoir.

Further it is not shown that plaintiffs by their stipulations surrendered valuable rights. The first seasonal irrigation of upper valley lands along the side of a stream tends to reduce the amount of the flow of such stream in lower valleys but after the return flow from such irrigation again reaches the stream the amount of the stream in the lower valleys is increased by the amount of the return flow. The decrease in the flow of the stream in the lower valleys occurs early during, the spring run-off when there is usually a surplus of water but the later increase from the return flow should continue throughout the season when there is usually a scarcity of water. This may explain why the plaintiffs were willing to make such stipulation and

how it was advantageous to all parties concerned.

In view of the foregoing considerations we conclude that there was a showing of reason to believe that these changes to the extent of 9.33 second feet could be made without impairing vested rights of others and the District Court erred in its refusal to approve such applications to that extent. Cases are remanded with directions to approve the applications to the extent indicated and to allow costs of this appeal to the appellants.

McDONOUGH, C. J., and HENRIOD, J., concur.

WORTHEN, J., concurs in the result.

CROCKETT, Justice (concurring).

I concur in placing approval upon the action of the State Engineer in allowing the change of place of diversion. Under the findings of the trial court it appears that 9.33 c. f. s. is the quantity of water which was completely used up through evaporation, plant consumption and transpiration under the former usage. Therefore, this quantity of water never did get down to the plaintiff lower users by return flow to the stream or otherwise. Retaining it in the Deer Creek Reservoir and diverting it through the conduit down to Utah and Salt Lake Valleys does not adversely affect plaintiffs nor diminish the quantity of water they should get.