300 P.2d 603

**EAST BENCH IRRIGATION COMPANY et al., Plaintiffs and Respondents,**

v.

**STATE of Utah, Joseph M. Tracy, State Engineer of the State of Utah, Deseret Irrigation Company, et al., Defendants and Appellants.**

No. 8487.

Supreme Court of Utah.

Aug. 11, 1956.

Asst. Atty. Gen., Sam Cline, Milford, Nephi J. Bates, Richfield, C. W. Wilkins, Richard H. Nebeker, Salt Lake City, Ferdinand Erickson, Richfield, for appellants.

McKay, Burton, McMillan & Richards, Paul Reimann, Salt Lake City, for respondents.

WADE, Justice.

What provisions should be included in the district court's judgment is the question raised by this appeal. The State Engineer rejected the applications of the respondents, who are the plaintiffs in this action, to change the place of diversion and the place and manner of use of the waters of the South Fork of the Sevier River. The district court on appeal reversed that decision and we affirmed its holding that the applications should be approved but reversed some other provisions of that judgment.[1] Each side of this controversy is greatly concerned in obtaining the full benefit of the favorable parts of our previous decision and in not allowing the opponent more advantages than that decision requires.

Upon the remand, each side prepared and submitted to the district court findings, conclusions and judgment in accordance with its views, and after full argument the trial court prepared, signed and entered its own findings which differed in some respects from all of the proposals. The court's

Thorpe Waddingham, Delta, E. R. Callister, Jr., Atty. Gen., Robert B. Porter,

1. East Bench Irr. Co. v. Deseret Irr. Co., 2 Utah 2d 170, 271 P.2d 449.

findings and conclusions cover and are in accord with the points discussed in our previous opinion and their sufficiency is not seriously questioned, but the judgment merely directs the approval of the applications, directs that the engineer supervise the changes but does not set out the rights, liabilities, limitations or duties of the parties which we decided in our previous decision. Although the court's judgment does not follow their proposals, the respondents contend that it is sufficient. They argue that since the court, on appeal from the decision of the State Engineer, can only decide the questions which the State Engineer could have decided in the first instance, the judgment of that court should merely direct the approval of the applications, state that the changes must not impair vested rights of others and order the engineer to supervise the changes in accordance with law. They also suggest that it would be unconstitutional for the State Engineer to adjudicate questions of law which are presented by the approval or rejection of such applications, and therefore the judgment of the district court can do no more than direct the approval or rejection of such applications. On the other hand the appellants, who are the protestants and defendants in this action, contend that the judgment of the district court completely ignored and disregarded our previous decision.

There are two kinds of applications which the State Engineer must approve or reject and his decision may be appealed to the courts: one is an application to appropriate unappropriated public waters, and the other is an application to change the place of diversion or the place or use of water.[2] The statutes require the approval of such an application before any right to make such an appropriation or such change can be acquired; in both cases the engineer must give notice of the application with opportunity for a protest and a hearing before his approval or rejection. Such applications must be approved if the engineer finds reason to believe that some rights under such application may be acquired without impairing vested rights of others.[3] The engineer's decision is based on his understanding of the law applicable to the facts as he views them.

The State Engineer is an executive, not a judicial officer. His decision on such an application may be based on his views of very complicated questions of law and fact, but he does not adjudicate either the law or the facts in the case and it is doubtful that the legislature, under our Constitution, has authority to confer upon the State Engineer the power to make such an adjudication. He is not required to be trained in or to be qualified to pass on such ques-

2. See sections 73–3–2, 3, 5, 6, 7, 8, 10, 14 and 15, U.C.A.1953.

3. See Provo Bench Canal & Irr. Co. v. Linke, 5 Utah 2d 53, 296 P.2d 723, and cases cited in note 1 therein.

tions of law. He does have special training in the operation and control of natural streams and irrigation and other artificial use and control of water and water rights. His office must keep records of and he has the supervision and control of the streams and water systems of this state. Although he is especially qualified to understand the facts involved in these problems, the legislature has not made his decision of such facts binding on the courts on an appeal, but provided for a trial de novo on both law and facts in the district court in case of an appeal from his decision.[4]

Since the engineer's decision to approve or reject such an application is based on his views of the law as applied to the facts which he finds reason to believe exist or may result from the approval of such application, the legislature appropriately provided for an appeal to the courts from his decision, where such questions of law and fact may be adjudicated.

 Such an appeal is taken by commencing an action in the district court, where a trial de novo is provided for on all issues which could have been raised under the application to the State Engineer. Such action is strictly limited to the trial of such issues as could have been raised before the engineer, and an appeal to this

court is provided from the decision of the district court. The decision of these courts on such appeal from the State Engineer's decision has the same effect and no more on the rights of the applicants to proceed with their proposed project as the same decision of the engineer would have had without an appeal.[5] However, the decision of the engineer is merely the decision of an administrative or executive officer, not the decision of a court; it does not adjudicate the law or the facts in issue, it neither becomes the law of the case nor is it res judicata of the issues involved, nor does it become a binding precedent on the law in future cases as does the decision of the district court and of this court on such appeal. The decisions of such courts where the decision of the State Engineer is appealed to them are not merely the decisions of an administrative or executive officer or body, they are the adjudications of courts acting as such, they become the law of the case, are res judicata, and are binding precedent on the law the same as other decisions by such courts on other matters. This is obviously true notwithstanding some language used in previous cases which may suggest a holding to the contrary. Such suggested holdings to the contrary were at most mere dicta, for such holdings were not necessary to sustain the decision

4. See sections 73-3-14 and 15, U.C.A.1953.

5. See United States v. District Court, Utah, 238 P.2d 1132; Id., Utah, 242 P.2d 774.

240

of those cases.[6] There is no basis for any contention that the decisions of these courts on an appeal from the State Engineer's decision do not have the same effect as an adjudication of the issues involved as do the decisions of such courts under similar circumstances in other matters.

However, we must not lose sight of the fact that there are a number of reasons why some questions which are considered by the courts in cases on an appeal from the engineer's decision are not necessarily adjudicated by the courts' decisions in such cases.

■ One such issue which cannot be adjudicated on such an appeal is the extent or priority of rights which the applicant hopes to acquire under such application. This for the obvious reason that an adjudication of such rights is premature for no cause of action for the adjudication of such rights can accrue at that time. Before a cause of action can arise to adjudicate that the applicant has established or perfected the rights which he seeks under such application, his application must first be approved and thereafter by compliance with its terms and provisions he must perfect the rights which he seeks under the application, and until this has occurred a suit to adjudicate that he has such rights is premature. For until after his applica-

tion is approved he can acquire no rights under such application.[7]

Another reason why issues considered by the courts on such appeals are not adjudicated in such actions is that often the rights of the protestants and sometimes some rights of the applicants have been adjudicated in a previous action. In such cases there is no necessity for a readjudication, but the court is bound by the previous adjudication. Even in cases where such rights have not been previously adjudicated it is often unnecessary for such an adjudication because the decision of such courts on appeal, the same as the decision of the State Engineer from which the appeal is taken, is based only on a finding that there is reason to believe that rights may be acquired in accordance with the application and not on an adjudication of such issues. This is true as to almost every issue of fact involved in such a case, the courts' decisions in such cases being based only on a finding of reason to believe that such facts do or may exist if the application is approved rather than a finding of such facts.[8]

■ However, there are issues in every appeal from the engineer's decision which must be adjudicated. The court must adjudicate whether there is reason to believe that some rights may be acquired under such application without impairing vested rights of others.[9] In some such cases

6. See cases cited in note 5.
7. See cases referred to in note 3.
8. See cases referred to in note 3.
9. See cases cited in note 3.

the court must adjudicate the priority of conflicting rights,[10] and in other cases, as we did in our previous decision in this case, it must adjudicate whether a foreseeable possible effect will constitute an impairment of vested rights. On the previous appeal in this case, plaintiffs made two contentions: First, they contended that they had an adjudicated right to use a specified flow of water during the irrigation season and a decreased specified flow during the remainder of the year, and that they were entitled to use the full amount of the flow specified throughout the year under these proposed changes even though such changes had the effect of decreasing the amount of water which would reach the protestants. Secondly, they contended that even though we rejected their first contention, their evidence showed reason to believe that by more efficient and economical practices and methods of use of their water under the proposed changes, they could store the water and use some of it on other lands without increasing the amount of water consumed thereby and without decreasing the amount of water which would reach the lower users. We rejected the first contention but approved the second one. In so doing we were required to adjudicate the issues which we did determine in our previous decision. The judgment of the trial court should contain a statement of our determination of such

issues the same as it would in any other case and this is especially true in this case in view of the intensity of the contest, the importance to each side that it obtain the full benefit of our decision and that the other side be not allowed to obtain advantages not therein required. We therefore hold that the trial court abused its discretion in refusing to embody in the judgment express statements of our adjudication of all the issues necessary for a determination of the case.

Before discussing the detailed provisions that should be embodied in the judgment, we again call attention to the fact that the approval of such an application may be required even though the court only finds reason to believe that many facts involved exist or will result from the operation under such approval. In the findings of fact the trial court found as facts many propositions which it was only necessary to find that there was reason to believe that such were the fact or that such would be the fact under the operation of the proposed changes. The better practice would seem to be to only find reason to believe such facts exist where that is all that is required, particularly where the fact in question deals with the effect of the operation under the applications.

We will indicate what provisions the judgment should contain by approving, re-

10. Tanner v. Bacon, 103 Utah 494, 136 P.2d 957.

jecting or discussing various provisions of one or the other of the proposed judgments submitted to the trial court by opposing counsel which are made a part of the record in this appeal. We shall also point out additional provisions which should be embodied in the judgment.

We approve paragraphs 1, 2 and 4 of respondents' proposed "Amended Judgment and Decree." Paragraphs 1 and 2 approve all of the applications which are before this court. Paragraph 4 authorizes the respondents to proceed to construct the necessary works to put the proposed changes into operation. However, we direct the addition of the following words to the end of that paragraph: "and in accordance with the provisions of and subject to the limitations contained in this judgment."

We also approve paragraphs 3 and 4 of the proposed "Decree" of appellants, except that such paragraphs should be amended as hereinafter pointed out. Paragraph 3 states that appellants have a vested right to the same flow of water past the Kingston Measuring Station in the same quantity as it would have done without the proposed changes, with the same hourly changes as would have occurred under the old system. Our previous decision did not require the hourly fluctuations. To try to duplicate the hourly fluctuations would greatly complicate the administrative problems without benefiting anyone, so this paragraph should be amended so as to eliminate that require-

ment, and require only the same quantity of water per day as would have flowed past that station but for the proposed changes. Paragraph 4 also contains the same provision for hourly fluctuations and it should also be amended to eliminate that requirement.

Paragraph 4 requires the State Engineer and the Sevier River water commissioners to determine "from day to day" the quantity of water that would flow past Kingston absent such changes, "and to cause such quantity of water as so determined to actually pass" such station "on the same day" as would have passed such station without such changes. This provision is all right where it is possible to enforce it while making the most accurate determination possible of the daily quantity of water which would have passed such station without such changes. Our previous decision did not require a "from day to day" determination of such quantity of water, nor a separate determination for each day unconnected with the preceding and following days. We required an *advance* determination of such quantity of water so as to allow time to arrange for the required flow at the station on the day in question, leaving it up to the engineer and commissioners how far in advance and the number of days which should be determined in one figuring. We recognized that changes might occur between the time of the first determination and the end of the day, for

which such determination was made which would show the first determination to be inaccurate, in which case we required a second determination of such quantity and a later adjustment of such flow in some cases even after the end of the day for which such determination was made. In such case the rights of lower users where dependent on a certain quantity of water for the day in question should be based on the last determination. This subdivision should be amended to comply with the foregoing requirements. The provisions of paragraph 7 of respondents' proposed "Amended Judgment and Decree" contain most of the above suggested provisions, and to that extent is approved.

Paragraph 5 of appellants proposed "Decree" provides that "the State Engineer should not permit the construction of such Hatch Town Reservoir until it has been shown, by actual drainage of the lands of plaintiffs and substantial changes in the use of the waters by plaintiffs, that water savings have been effected * * *." This requires a demonstration of a saving in the amount of water consumed before the reservoir can be constructed. Our previous decision does not justify such a provision and such provision would work a hardship on respondents. It would require respondents to actually effect such saving of water consumed and then turn the water so saved over to appellants to use during the time required to build the reservoir and other diverting works necessary to effect the proposed changes. We reject such a requirement.

However, our previous decision required the approval of the application strictly on condition that the respondents make the changes suggested by their testimony, from which the trial court found reason to believe that the changes could be made without increasing the amount of water consumed thereunder, and that such approval would under those conditions, give the respondents the opportunity under the control of the State Engineer to experiment and demonstrate that such changes could be made without impairing vested rights. Under such holdings the judgment should provide that the proposed changes in place of diversion and place and manner of use of respondents' waters shall not be made until they show to the satisfaction of the State Engineer that by following the changes proposed in their testimony they can make a saving in the amount of water consumed on their presently operated property. The judgment should also provide that when or if the applied for changes go into operation, the State Engineer shall enforce the requirement that the same quantity of water must pass the Kingston Measuring Station as would have passed that station without such changes in accordance with his determination, and that he may require the respondents to turn down to the lower users all of the water available to them

either for the irrigation of their lands or which is stored in their reservoir, if necessary, in order to meet this requirement. With this fully understood in advance, there seems little danger that appellants' vested rights will be impaired by such changes.

We also approve the provisions of paragraph 8 of respondents' proposed "Amended Judgment and Decree" requiring the State Engineer to keep permanent records reflecting the computations and determinations of the flow past Kingston, and to make such records available for inspection to all parties for a reasonable time. There is some ambiguity, probably from inadvertence, in the last sentence of that provision, which should be corrected. We also approve paragraphs 9, 10 and 11 of respondents' proposed "Amended Judgment and Decree."

Case reversed and remanded with directions to enter judgment in accordance with the views expressed in this opinion. Costs to appellants.

McDONOUGH, C. J., and CROCKETT, J., concur.

WORTHEN, J., does not participate.

HENRIOD, Justice.

I dissent for the same reasons mentioned in my dissent in 2 Utah 2d 170, 271 P.2d 449.