364 P.2d 113

PIUTE RESERVOIR & IRRIGATION COMPANY, Deseret Irrigation Company, et al., Plaintiffs and Appellants,

v.

WEST PANGUITCH IRRIGATION & RESERVOIR COMPANY, State of Utah, and Wayne D. Criddle, State Engineer of the State of Utah, Defendants and Respondents.

No. 9411.

Supreme Court of Utah.

Aug. 28, 1961.

Marr, Wilkins & Cannon, Richard H. Nebeker, Salt Lake City, Sam Cline, Milford, Thorpe Waddingham, Delta, Olsen & Chamberlain, Richfield, for appellants.

McKay & Burton, Henry D. Moyle, Salt Lake City, Walter L. Budge, Atty. Gen., Richard R. Boyle and Dallin W. Jensen, Asst. Attys. Gen., for respondents.

WADE, Chief Justice.

On March 17, 1957, West Panguitch Irrigation & Reservoir Company filed an application with the State Engineer for a permit to change a part of their established winter direct flow water rights to a right to store this winter water in a reservoir not yet constructed. Hereinafter we will sometimes refer to the West Panguitch Irrigation & Reservoir Company as applicant, or West Panguitch Company, it being one of the respondents and a defendant in this action. The applicant proposes to construct a dam near the mouth of Panguitch Canyon above the city of Panguitch and about 16 miles below Panguitch Lake. Panguitch Lake is also used by applicant West Panguitch Company as a water storage facility. The proposed dam and reservoir-site is above the place where applicant diverts the water of Panguitch Creek into two irrigation canals for use for irrigation and culinary purposes in the surrounding territory.

Applicant proposes to store 700 acre-feet of winter waters of Panguitch Creek and use it in the dry summer months to supplement their irrigation streams. It also contends that such a storage reservoir would be of great benefit in preventing floods and disposing of silt and in other ways. Most of the water in question has for years been diverted into applicant's canals and used for winter flooding, stock watering and domestic purposes. The diversion into applicant's canals is by tight dam. Panguitch Canyon Creek is a tributary of, and when the water is not diverted, merges with the Sevier River. There is no direct above-

ground return flow of the waters diverted from the creek either into the creek or the Sevier River, and only occasionally when there is unusual precipitation does the water from the creek, since the tight diverting dam was constructed, flow directly into that river.

By the Cox Decree applicant was awarded all of the flow of the Panguitch Creek for the entire year with a storage right in the Panguitch Lake. Applicant does not propose to irrigate any new land by reason of this application, but seeks only to supplement during the dry season the irrigation of land already under cultivation and now irrigated from this stream. The State Engineer approved this application with several limitations thereon. Among such limitations were that the change could be made and placed in operation if this could be effected without impairing existing rights to the use of the waters in question by lower users, that no new lands be brought under cultivation by reason of this storage reservoir, that plans and specifications be submitted to and approved by the State Engineer before construction is commenced, and that measuring devices be installed by applicant as required by the State Engineer. The District Court expressly included the same limitations in its judgment approving the application as was contained in the approval by the State Engineer.

In some respects this case is similar to East Bench Irrigation Co. v. Deseret Irrigation Co.,[1] which deals with an application to construct for storage of about 13,650 acre feet of the waters of the South Fork of the Sevier River. Here the applicant West Panguitch Irrigation Company seeks to store the winter waters from Panguitch Creek, a tributary of the Sevier River, in a reservoir to be built near the mouth of Panguitch Canyon for use to supplement its irrigation water during dry summer seasons. This same problem was presented in the East Bench case. Both cases involve the head waters of the Sevier River above Piute Reservoir, and in both cases the lower water users objected, claiming that such change will deprive them of their established rights to use the water which will be stored for use in the lower irrigation system from that river. The cases are different in that in the East Bench case the appellants proposed not only to supplement the irrigation waters during the dry summer season, but proposed to bring under cultivation and irrigation new lands, and to save water by draining swampy areas and lowering the water table under the ground already under irrigation.

It is not of controlling importance that applicant West Panguitch Irrigation Company intends to irrigate only lands which have long been under irrigation from the

1. East Bench Irrigation Co. v. Deseret Irr. Co., 2 Utah 2d 170, 271 P.2d 449; same case on appeal from retrial, 5 Utah 2d 235, 300 P.2d 603.

water of the Panguitch Canyon Creek. The determining question is whether the storage of this winter water in the proposed reservoir will interfere with the established or vested rights of the protesting lower water users of the Sevier River System. No doubt the proposed dam can be constructed and the reservoir used to store water to prevent floods and dispose of silt and other purposes for short periods of time, then released for domestic, stock watering, land flooding, and other purposes as it is now used without impairing vested rights to use such water by the lower water users. But it is doubtful that applicants would expend the money to make the change if their right of storage were thus limited. So the real problem presented is, does the evidence show reason to believe that the winter water now used for land flooding, domestic and stock watering purposes can be stored in the proposed reservoir until the dry irrigation season, and then used to supplement the irrigation of the presently irrigated lands of applicants without impairing vested rights of lower water users on the Sevier River system?[2]

There is a dispute in the evidence on a controlling issue of fact of whether the waters used by the applicants in the winter for domestic, stock watering, and land flooding purposes ever reached the Sevier River system. Concededly, only occasionally does water from Panguitch Canyon Creek flow directly above ground into the Sevier River, either from the creek or by drainage from the adjoining lands which are flooded in winter, so this question creates no serious problem for allowance can easily be made on an estimate of the amount of such occasional flow in the future.

The evidence of protestants, who are the lower water users, indicates that a substantial portion of the winter water used by applicant thereafter reaches the Sevier River through seepage, percolation and underground water flow. The river flows near the flooded grounds for a considerable distance on one side thereof, with a general slope from the flooded grounds toward the river. There is considerable increase in the amount of the flow of the water of the river where it enters the flooded grounds and where the flooded grounds end. Especially is this true during the spring run-off period, which is shortly after the winter floodings. The land on the opposite side of the river is also irrigated and flooded during the winter. Applicants have made no measurements and kept no records of the amount of the increase of the flow of the water in the river as it passes

2. See East Bench Irrigation Co. v. Deseret Irr. Co. (two cases cited in note 1); Provo Bench Canal & Irr. Co. v. Linke, 5 Utah 2d 53, 296 P.2d 723, and cases cited to that effect in note 1 of that case; American Fork Irrigation Co. v. Linke, 121 Utah 90, 239 P.2d 188.

near the flooded area. The protesting lower water users claim that approval of the application was based largely on applicants' failure to keep these vital records, which they claim would have conclusively shown that the flooding of the land in the winter did increase the flow of the water in the Sevier River in the early spring, and that the storage of this flooding water will substantially decrease the amount of water available in the Sevier River for storage in the Piute, Sevier Bridge and other reservoirs on the Sevier River system, and thereby impair the established and vested rights of the protesting lower water users. The lower water users claim that if this winter water is stored in the reservoir which applicants seek to construct, it will not be returned to the river in the spring of the year during the high-water period, but will be used for irrigation during the dry seasons when the return flow will not be available for storage in the reservoirs below, but will be diverted for reuse a number of times below applicants' winter flooding area and above the Piute Reservoir, and none of it will reach the lower reservoirs if used during such dry seasons when irrigation water is scarce and in great demand.

On the other hand, the applicant West Panguitch Company contends that the evidence shows that the winter water which they seek to store in the proposed reservoir, under the present use, except occasionally by direct flow, never reaches the Sevier River. Considerable testimony was produced by both sides on that issue, both expert and otherwise. A significant feature of this evidence is, as previously pointed out, the lack of measurements and records of the increase in the volume of the water flowing in the Sevier River as it passes through this area which might be affected by the underground flow from the winter flooding of applicants' land. If under the present use none of these winter waters reach the Sevier River after being diverted and used by applicant, then the proposed storage would not interfere with the established vested rights of the lower water users. However, if the waters which applicant proposes to store do, under the present system, contribute to the volume of water available for storage and use by the protesting lower users, then storage by applicant until the dry irrigation season, which would prevent such use by the lower users, would impair their vested rights to the use of such waters.

The trial court found that "there is reason to believe that there is no * * contribution of underground flow" to the Sevier River from the use by applicant of these winter waters. Such a finding does not adjudicate that there is no such return flow, but it does justify the approval of

the application. Such approval allows the applicant to construct the reservoir with the hope that it can thereafter demonstrate that the change will not impair established rights of the protesting lower users. This is in accord with the liberal public policy of encouraging the development and economic use of as much water as is possible. However, in proving its claim under this application to the State Engineer to obtain a certificate of such change [3] or to a court where the rights established under such application may be litigated, applicant must show more than that there is reason to believe that the change does not impair established vested rights of the protestants. It must support a decision in its favor on this question by substantial evidence, and it has the burden of convincing the trier of the facts by a preponderance of all of the evidence that such change does not impair the vested rights of the protesting lower water users.

So we approve this application with the limitations imposed and the requirements of proof above pointed out. Each side shall bear its own costs.

McDONOUGH, CALLISTER and CROCKETT, JJ., and R. L. TUCKETT, District Judge, concur.

HENRIOD, J., not participating.

**3.** See Sections 73–3–16 and 17, U.C.A.1953.